825 A.2d 430

ATTORNEY GRIEVANCE COMMISSION OF MARYLAND

v.

Susan McMillan DAVIS.

Misc. AG No. 43, Sept. Term, 2002.

Court of Appeals of Maryland.

June 10, 2003.

134

Melvin Hirshman, Bar Counsel and Raymond A. Hein, Asst. Bar Counsel for the Attorney Grievance Commission, for Petitioner.

Peter Driscoll, Columbia, for Respondent.

Argued Before BELL, C.J., and ELDRIDGE, RAKER, WILNER, CATHELL, HARRELL and BATTAGLIA, JJ.

HARRELL, Judge.

## I.

Susan McMillan Davis, Respondent, was admitted to the Bar of this Court on 26 June 1985. On 7 December 2000, by an unreported Opinion and Order (Misc. Docket AG, No. 1,

September Term, 2000), we suspended Respondent from the practice of law in the State of Maryland for a period of ninety days based on allegations separate from this proceeding.[1] Her suspension commenced on Monday, 8 January 2001.

The Attorney Grievance Commission, acting through Bar Counsel, filed a petition with this Court for disciplinary action against Respondent alleging violations of the Maryland Rules of Professional Conduct for conduct committed from May 1991 through December 2000. The Commission charged Ms. Davis with violating Rules 1.1 (Competence),[2] 1.3 (Diligence),[3] 1.4 (Communication),[4] 3.1 (Meritorious Claims and Contentions),[5] 3.2 (Expediting Litigation),[6] 8.1(b) (Disciplinary Matters),[7]

---

**1.** We found that Ms. Davis violated Rules 1.1, 1.3, 1.4, 8.1, and 8.4 of the Maryland Code of Professional Conduct. *See infra* n. 2–9.

**2.** Rule 1.1 provides: "A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation."

**3.** Rule 1.3 provides that "[a] lawyer shall act with reasonable diligence and promptness in representing a client."

**4.** Rule 1.4 requires that:

(a) A lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information.
(b) A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.

**5.** Rule 3.1 mandates:

A lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis for doing so that is not frivolous, which includes a good faith argument for an extension, modification or reversal of existing law. A lawyer may nevertheless so defend the proceeding as to require that every element of the moving party's case be established.

**6.** Rule 3.2 requires that "[a] lawyer shall make reasonable efforts to expedite litigation consistent with the interests of a client."

**7.** Rule 8.1(b) provides:

8.4(a) and (c) (Misconduct),[8] and 1.16(a) and (d) (Terminating Representation).[9] The charges stemmed from complaints by Mia Darbouze and Cher Harris. Pursuant to Maryland Rule 16–752(a),[10] we referred the matter to Judge Paul A. Hackner

An applicant for admission or reinstatement to the bar, or a lawyer in connection with a bar admission application or in connection with a disciplinary matter, shall not:
. . . .
(b) fail to disclose a fact necessary to correct a misapprehension known by the person to have arisen in the matter, or knowingly fail to respond to a lawful demand for information from an admissions or disciplinary authority, except that this Rule does not require disclosure of information otherwise protected by Rule 1.6.

8. Rule 8.4 provides in relevant part:
It is professional misconduct for a lawyer to:
(a) violate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another;
. . . .
(c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation;
. . . .

9. Rule 1.16 provides in relevant part:
(a) Except as stated in paragraph (c), a lawyer shall not represent a client or, where representation has commenced, shall withdraw from the representation of a client if:
(1) the representation will result in violation of the rules of professional conduct or other law;
(2) the lawyer's physical or mental condition materially impairs the lawyer's ability to represent the client; or
(3) the lawyer is discharged.
. . . .
(d) Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled and refunding any advance payment of fee that has not been earned. The lawyer may retain papers relating to the client to the extent permitted by other law.

10. Rule 6–752(a) (Order designating judge) provides:
Upon the filing of a Petition for Disciplinary or Remedial Action, the Court of Appeals may enter an order designating a judge of any circuit court to hear the action and the clerk responsible for maintaining the record. The order of designation shall require the judge, after consultation with Bar Counsel and the attorney, to enter a

of the Circuit Court for Anne Arundel County to conduct an evidentiary hearing and make findings of fact and proposed conclusions of law.

Judge Hackner held an evidentiary hearing on 8 and 9 January 2003. Petitioner was represented by Bar Counsel and Respondent was represented by counsel. After counsel was heard, the judge took the case *sub curia*. On 14 February 2003, Judge Hackner entered the following findings of fact and conclusions of law:

## "I. Background

"This case was filed by the Petitioner, the Attorney Grievance Commission of Maryland ("AGC"), through Bar Counsel, against the Respondent, Susan McMillan Davis. Ms. Davis was admitted to the Bar on June 26, 1985, and currently maintains a law office in Howard County. The matter was called in open court on January 8 and 9, 2003. Testimony and exhibits were received. After counsel were heard, the Court held the case *sub curia*. The Court, having reviewed the testimony taken, all exhibits, and having considered the arguments of counsel, finds the following facts and makes the following conclusions of law:

## "II. Findings of Fact

"The Court finds the following facts have been established by clear and convincing evidence:

"A. Complaint of Mia Darbouze

"On May 21, 1991, Mia Darbouze employed Ms. Davis to represent her with respect to a workers' compensation claim arising from a May 6, 1991 slip and fall accident that occurred during the course of her employment at Howard County General Hospital (the "Hospital"). (*See* Ex. 7). Before she retained Ms. Davis, Ms. Darbouze's previous

---

scheduling order defining the extent of discovery and setting dates for the completion of discovery, filing of motions, and hearing.

attorney had already filed a workers' compensation claim on her behalf.

"Between May 1991 and May 1993, Ms. Davis and Ms. Darbouze had regular contact regarding the status of the workers' compensation claim. During that time, the two discussed the possibility of filing a third party claim could not be filed until the workers' compensation case was concluded. She also explained that normally, workers' compensation is the only available remedy against an employer but there are limited situations in which an employee can recover from an employer in a third party claim. Ms. Davis and Ms. Darbouze also discussed the possibility of pursuing a third party claim against the Hospital's cleaning company. Ms. Darbouze informed Ms. Davis that she thought the Hospital's cleaning company on the date of her injury was called Marriott. Ms. Davis explained that any money awarded in the third party claim would be subject to a workers' compensation lien and also analyzed Ms. Darbouze's likelihood of success if her case went to trial.

"When Ms. Darbouze retained Ms. Davis, she was an associate attorney with Cooper & Reuter, P.A. In May 1993, Ms. Davis left the Law Office of Jack Cooper (formerly Cooper & Reuter) and became a principal in the firm Reuter, Tuma & Davis, P.A. On May 25, 1993, Ms. Darbouze signed a document discharging the former firm and authorizing Ms. Davis and her new firm to represent her. (*See* Exs. 8 & 9). Ms. Darbouze's file was transferred from Mr. Cooper's office to Ms. Davis's new office.

"Ms. Davis continued to represent Ms. Darbouze before the Workers' Compensation Commission. By order dated August 3, 1993, Ms. Darbouze was awarded permanent partial disability and Ms. Davis and her firm were awarded attorneys fees. (*See* Ex. 10).

"After the conclusion of the workers' compensation case, Ms. Davis and Ms. Darbouze had further discussions about filing a third party claim. Ms. Darbouze always desired to file such a claim. On several occasions, Ms. Davis advised Ms. Darbouze she would be responsible for advancing costs

if the action was filed. (*See* Exs. C & D). However, Ms. Davis never definitively advised Ms. Darbouze that she would not file the claim without an advance on fees or that she would decline to represent her without such an advance. Indeed, Ms. Davis eventually undertook to file suit without an advance of costs.

"On May 5, 1994, one day before the statute of limitations was to run, Ms. Davis filed suit on behalf of Ms. Darbouze in the Circuit Court for Howard County. The civil complaint named the Hospital and "ABC Corp. (name to be supplied) Unidentified Business, Corporation or Partnership" as defendant. Ms. Davis did not conduct any research into whether she could proceed against the Hospital in a third party claim.[1]

"[1] An action pursuant to the Workers Compensation Act is generally the exclusive remedy for an employee against an employer. Md. Code Ann., Labor & Employment, § 9–509(a). There are limited exceptions where a third party suit can be maintained against an employer, for example, where an employer fails to secure compensation in accordance with the title, or if the employer's deliberate act caused the injury. *Id.*, § 9–509(c).

"Ms. Davis did not name Marriott as a defendant. Ms. Davis believed that she could have amended the complaint after the statute of limitations expired to substitute the name of the cleaning company for ABC Corporation.[2] Ms. Davis contacted the Maryland State Department of Assessments and Taxation and was unable to find a cleaning service with the name of Marriott.

"[2] Under Maryland law, it is unlikely that the complaint could have been amended after the statute of limitations had run in order to substitute the name of the cleaning company. *See, e.g., Williams v. Hofmann Balancing Techniques, Ltd.*, 139 Md.App. 339, 365, 776 A.2d 4 (2001) (clarifying that an amendment to a pleading to add a new defendant is allowed after the statute of limitations runs if it corrects the name of an original party who ha notice of the pending case, but not to add a new party who had no notice of the claim); *Nam v. Montgomery County*, 127 Md.App. 172, 186, 732 A.2d 356 (1999) (holding "John Doe" pleading cannot be amended to correct the name of a defendant if that person had no notice of the suit before the statute of limitations runs).

"The docket entries for Ms. Darbouze's case indicate that the original summons for the Hospital was issued on May 6,

1994. The Hospital was not served with that summons. Another summons was issued on October 24, 1994, but that one was also not served. Ms. Davis wrote the court on November 17, 1994 to request another summons. On the same date, Ms. Davis wrote Ms. Darbouze a letter and apologized for not getting back to her sooner and advised that she was waiting for a summons to be issued to serve the Hospital. (*See* Ex. 11). The Hospital was served by certified mail on December 12, 1994. (*See* Ex. 6). Ms. Davis did not offer any explanation at trial as to why the Hospital was not served until seven months after suit was filed.

"After the Hospital was served, its attorneys contacted Ms. Davis several times to ask her to voluntary dismiss because the suit was barred by the Workers Compensation Act. *See* Exs. 18 & 19. Ms. Davis did not respond to counsel and did not voluntarily dismiss the claim against the Hospital. On January 17, 1995, the Hospital filed a motion to dismiss. Ms. Davis testified that she does not recall doing any research to respond to the motion to dismiss, and her file did not disclose any such research. Ms. Davis did not file a response to the motion to dismiss and did not inform her client that the motion had been filed, In fact, Ms. Davis and Ms. Darbouze had no contact regarding the case from November 17, 1994 through February 1995.

"Ms. Darbouze did not learn about the motion to dismiss until Ms. Davis's office forwarded to her a copy of a February 23, 1995 order granting the motion. The Circuit Court for Howard County dismissed the claim against the Hospital and imposed sanctions in the amount of $250.00 against Ms. Darbouze. *See* Ex. 12. The claim against ABC Corporation was not affected by the order of dismissal.

"After receiving the order, Ms. Darbouze contacted Ms. Davis's office and was informed by either Ms. Davis or her secretary that Ms. Davis would pay the $250 sanction. Ms. Davis does not recall whether she ever paid the sanction. There being no other activity reflected in the court file, the

Circuit Court for Howard County closed the case on March 8, 1996.[3] (*See* Ex. 6).

[3] Although the record does not indicate why the file was closed by the circuit court, more than one year had transpired from the last activity in the case and it is likely that the case was closed by operation of Md. Rule 2–507.

"Between late 1995 and 1999, Ms. Darbouze contacted Ms. Davis's office several times regarding the status of her case against the cleaning company. Ms. Darbouze also contacted Ms. Davis regarding several other matters, including her bankruptcy, conflicts with her job, and problems with her marriage. None of these other contacts or conversations pertained to any litigation involving Ms. Darbouze.

"Telephone message logs from Ms. Davis's office indicate lengthy periods of time during which Ms. Davis did not return Ms. Darbouze's phone calls. (*See* Joint Ex. I). Ms. Davis conceded that she did not return Ms. Darbouze's calls' call for call.' A phone log dated '10/25 to 11/15' with an unknown year, contains messages from Ms. Darbouze on October 27, October 31, November 9 and November 14. (*See id.*). In each message, Ms. Darbouze was calling about the status of her case and asking Ms. Davis to call her back. (*Id.*). Another log in an unknown year for the time period '3/1 to 3/16' includes three messages from Ms. Darbouze requesting the status of her case. (*Id.*). A ten-day span is also indicated by messages dated October 31 and November 9, 1995. Again, Ms. Darbouze was requesting an update on her case. *Id.*

"Sometime in 1997, Ms. Darbouze contacted Ms. Davis to say that she was ill and wanted to do whatever was possible to settle her case. At this time, Ms. Davis advised Ms. Darbouze that her case was still active and set up an appointment with her. Ms. Darbouze's testimony on this point is consistent with a telephone message dated September 8, 1997, indicating there was an appointment scheduled for September 18 at 12 p.m.[4]

[4] According to Ms. Davis, this took place sometime in 2000. As discussed later in the Court's conclusions of law, whether this conversation took place in 1997 or 2000 has no bearing on the conclusion.

"At one point in 1998 or 1999, Ms. Darbouze contacted Ms. Davis's office and a secretary named Debbie informed her the case had been closed. However, soon after, Ms. Davis called Ms. Darbouze back and said that her case was not closed.

"Ms. Davis also informed Ms. Darbouze several times after late 1995 that the court file was in a retired judge's chambers. Ms. Darbouze's testimony on this point is consistent with an April 29, 1998 message from Ms. Darbouze: 'she wants to know what is happening with her case. Said she spoke with you 8 months ago. Her case is from 91. *Has the judge changed?*' (*See* Joint Ex. I) (emphasis added).

"After April 29, 1998, Ms. Davis was again delinquent in returning Ms. Darbouze's calls for nearly a month. Ms. Darbouze left another message on May 4, 1998. Again on May 18, 1998, Ms. Darbouze left a message asking for her case number and the date the case was filed. On May 21, 1998, Ms. Davis left another message inquiring what court her case was filed in, the date filed and the docket number. (*See* Joint Ex. I). It is clear that in all of these messages, Ms. Darbouze was calling about the status of the case against the cleaning company. The Court concludes that Ms. Davis did not return Ms. Darbouze's calls in each instance where there was another message asking for the same information within a few days of a prior message.

"In October 1999, Ms. Darbouze went to the clerk's office at the circuit Court for Howard County and learned her file was on the 'shelf' and that there had been no activity in the case since the claim against the Hospital was dismissed on February 23, 1995. A few days later, Ms. Darbouze asked Ms. Davis if there was still a case pending against the cleaning company, and Ms. Davis assured her that there was.

"In late 2000 or early 2001, Ms. Darbouze requested a copy of her file from Ms. Davis. Ms. Davis got in touch with Ms. Darbouze and advised her that the file would be available in mid-January 2001. Ms. Darbouze still had not

received the file in early February, so she left a message for Ms. Davis stating that if she did not receive the file, she would file a complaint with the AGC. Ms. Darbouze still did not receive the file from Ms. Davis and she filed a complaint with the AGC on February 13, 2001. (*See* Ex. 13).

"Ms. Darbouze eventually received a copy of her file from Ms. Davis in April 2001. Upon review of the file, Ms. Darbouze found a copy of a March 23, 1995 letter addressed to her. It stated, in pertinent part: 'This letter will confirm our recent meeting wherein it was decided that we would not proceed against the cleaning company. Therefore at this time I will be closing my file. . . .' (*See* Ex. 14).

"While there is no direct evidence, circumstantial evidence leads the court to the conclusion that Ms. Davis created the March 23, 1995 letter after Ms. Darbouze filed her complaint with the AGC.[5] Ms. Darbouze never received this letter and she does not recall any meeting with Ms. Davis in March of 1995. Ms. Darbouze maintained her own file of correspondence and case information and did not have a copy of this letter. Ms. Darbouze's actions after March 1995 are consistent with not having received the letter. If Ms. Darbouze had been informed that her case was closed, it is unlikely that she would have contacted Ms. Davis repeatedly over several years to inquire about the status of her case.

"[5] The Court cannot be certain how the letter was created, but realizes that it could have been by a number of possible means.

"Ms. Davis contends that the letter was written on March 23, 1995. She states that the letter could not have been after the fact because Tuma & Davis, the firm she was with in 1995, has disbanded sometime in 1997 and all letterhead was discarded at that point. Additionally, Ms. Davis contends that she does not possess the computer skills to create Tuma & Davis letterhead.

"Ms. Davis's actions, however, are inconsistent with her position. On more than one occasion after March 1995, Ms. Davis represented to Ms. Darbouze that her case was still

open. If Ms. Davis had sent the letter and closed her file in March of 1995, she would not have led Ms. Darbouze to believe her case still active, rather she would have reminded Ms. Darbouze that her case had been closed or sent a copy of the March 1995 letter.

"Ms. Davis testified that she personally typed a letter dated April 4, 2001 to the AGC. (*See* Ex. 15). The Court notes that the font in this letter is the same as that in the March 23, 1995 letter. (*Compare id. with* Ex. 14). But, other letters from Ms. Davis in 1994 and 1995 contain a different font. (*See* Exs. 11 and 14).

"Additionally, when Ms. Davis wrote to the AGC in April 2001 in response to the complaint filed by Ms. Darbouze, she did not mention or attach the March 23, 1995 letter. (*See* Ex. 15). Since the letter would have been critical documentary evidence in support of Ms. Davis's response to the complaint, logic dictates that she would not have omitted a reference to the letter if it had existed.

"After Ms. Darbouze filed her complaint, an AGC investigator, Sterling Fletcher, met with Ms. Davis on June 1, 2001 regarding both the Darbouze and Harris matters.[6] At that meeting, Mr. Fletcher renewed his request by a telephone call to Ms. Davis. Mr. Fletcher still had not received the file by July 18, 2001 and he wrote Ms. Davis on that date and again requested the file. (*See* Ex. 16). Ms. Davis wrote back on July 30, 2001 and advised that she would provide the file. (*See* Ex. 17). Ms. Davis has never provided the Darbouze file to Mr. Fletcher or to the AGC.

"[6] The Harris matter is discussed in Section B.

"B. Complaint of Cher Harris

"In January 2000, Cher Harris, who was in the early stages of an out-of-wedlock pregnancy, retained Ms. Davis to represent her with respect to establishing the paternity of her unborn child and any relating claim for child support after the child's birth. At that time, Ms. Harris paid Ms. Davis a retainer fee.

"When she initially met with Ms. Davis, Ms. Harris told her that the father of the child was William Leonard Mahoney. Ms. Harris explained that she met Mr. Mahoney when he was her client at Total Body Images, where she worked as a licensed massage therapist. During the course of their relationship, Mr. Mahoney went to Ms. Harris's home, where she gave him topless massages. Ms. Harris considered Mr. Mahoney to be her boyfriend. At all times during the course of their relationship, Mr. Mahoney was married with three children.[7]

"[7] Mr. Mahoney is still married.

"Ms. Harris explained that Mr. Mahoney worked for a family owned business and that she believed he received compensation or cash 'under the table' in addition to the income that would be shown on his pay stubs. Ms. Harris also stated that Mr. Mahoney frequently gave her expensive gifts and large amounts of cash. For these reasons, Ms. Harris requested that Ms. Davis conduct discovery or otherwise attempt to uncover Mr. Mahoney's assets and income.

"After she met with Ms. Harris, Ms. Davis contacted Mr. Mahoney's attorney, Paul Newhouse. From one or more of the letters she received from Mr. Newhouse, Ms. Davis learned that the details of the parties' relationship would be presented at the child support hearing and that the relationship would be portrayed as one of prostitution. Ms. Davis forwarded to Ms. Harris copies of all the letters from Mr. Newhouse. Ms. Davis advised Ms. Harris that the circumstances surrounding her relationship with Mr. Mahoney and the fact that he was married and had three other children might have an effect on the amount of child support awarded.[8]

"[8] Ms. Davis further explained that these facts would only have an effect if the parties' income was high enough to exceed the maximum support guidelines, so that the amount of child support would be within the discretion of the judge or master. *See* Md.Code Ann., Fam. Law § 12–204(d).

"On August 11, 2000, Ms. Harris gave birth to a daughter. Within a few days of the birth, Ms. Harris stopped into Ms. Davis's office and urged her to move forward with the

paternity and child support proceedings. On or around August 18, 2000, Ms. Davis learned from Mr. Newhouse that a paternity test would be necessary. On August 22, 2000, Ms. Davis filed a "Petition to Establish Paternity and Child Support" (the 'petition') on behalf of Ms. Harris in the Circuit Court for Howard County. Mr. Mahoney's answer was filed on or around September 28, 2000.

"Ms. Harris attempted to unsuccessfully contact Ms. Davis a number of times during the course of her representation. There was not always a secretary or receptionist at Ms. Davis's office, so Ms. Harris usually left voice mail messages at the office or on Ms. Davis's cellular phone. Ms. Davis returned some, but not all, of the calls. If Ms. Davis was in the office when Ms. Harris called, she would take her call. Ms. Harris also stopped into Ms. Davis's office several times. Ms. Davis was not always there, but if she was available, she would meet with Ms. Harris.

"In mid-October 2000, Ms. Davis attempted to schedule a paternity test with a mobile testing company, but this arrangement was unacceptable to Ms. Harris. Ms. Davis then contacted a lab in Baltimore and tentatively scheduled a test for Ms. Harris and her daughter for November 4, 2000. Ms. Harris called the lab and changed the date to one that was more convenient for her. The results of the paternity test established that Mr. Mahoney was the father of Ms. Harris's daughter. There was no unreasonable delay in scheduling the paternity testing.

"Ms. Davis never filed any written discovery or noted any depositions in the action. She did informally receive copies of Mr. Mahoney's pay stubs. In December 2000, Ms. Davis related to Ms. Harris that a settlement proposal had been made by Mr. Newhouse under which Mr. Mahoney would pay $1000 per month in child support. Ms. Davis believed that this was a reasonable offer based on the income reflected in Mr. Mahoney's pay stubs and in light of the evidence that could be introduced at the child support hearing.

"Ms. Harris was not satisfied with this offer and request-ed Ms. Davis to counter-propose that Mr. Mahoney also pay for the child's health insurance. Ms. Harris reiterated to Ms. Davis that she did not want to accept $1000 a month until discovery was conducted.

"On December 7, 2000, the Court of Appeals suspended Ms. Davis from practicing law in the State of Maryland for a period of 90 days, effective Monday, January 8, 2001. Ms. Davis did not notify Ms. Harris of her impending suspension between December 7, 2000 and January 8, 2001. Addition-ally, Ms. Davis did not strike her appearance in Ms. Harris's case during this time or after the commencement of her suspension.

"Despite Ms. Harris's rejection of the proposed settle-ment terms, Ms. Davis sent Ms. Harris a letter and pro-posed consent order on December 13, 2000, which contained the same terms.[9] (See Pl.'s Ex. 1). There was no mention of the suspension in the letter.

[9] The Court is not convinced that Ms. Davis failed to present the counter proposal to Mr. Newhouse, as alleged by the AGC. Ms. Davis testified that she submitted the counter proposal to Mr. Newhouse and he rejected it and that she relayed the information to Ms. Harris. The Court finds that it is just as likely that Ms. Davis submitted the counter proposal to Mr. Newhouse and that his response was in the negative.

"Ms. Harris contacted Ms. Davis to let her know that the proposed consent order was unacceptable. Ms. Davis testi-fied that, shortly thereafter, she began to draft interrogato-ries and requests for production of documents, but these were not presented at the hearing of this case. Ms. Davis did not explain how she anticipated handling discovery requests, given that the responses would have been due during the period of her suspension.

"There is no evidence that Ms. Davis did anything else to preserve Ms. Harris's interests after that point. Ms. Davis knew that her suspension was pending, yet she did not inform Ms. Harris. Moreover, Ms. Davis did not immedi-ately refer Ms. Harris to another attorney, which would have been particularly important to preserve the momentum of the case.

"During the period of Ms. Davis's representation, Ms. Harris filed a claim for assistance with the Department of Social Services ('DSS'). DSS initiated a separate child support case and a hearing was scheduled for Friday, January 5, 2001. Ms. Harris went to Ms. Davis's office on or around January 2, 2001 to ask her to attend the hearing and to request that she contact the State's Attorney who would be prosecuting the matter. Ms. Davis did not inform Ms. Harris during that meeting of her impending suspension. Ms. Davis did not contact the State's Attorney and could not attend the hearing because she had a hearing in another matter at the same time.

"Sometime in early to mid-January 2001, Ms. Harris contacted the AGC to inquire about filing a grievance against Ms. Davis. Ms. Harris then learned for the first time of Ms. Davis's suspension. On January 21, 2001, Ms. Harris filed a complaint with the AGC. (*See* Ex. 3).

"Before she filed the complaint with the AGC, Ms. Harris wrote Ms. Davis to terminate her representation by letter dated January 15, 2001. (*See* Ex. 2). In that letter, Ms. Harris included the contact information for her new attorney, Stuart Snyder. (*Id.*). Upon receipt of the letter, Ms. Davis wrote to Ms. Harris and advised that her file was available to be picked up. Neither Ms. Harris nor her attorney ever picked up the file from Ms. Davis.

"It did not occur to Ms. Davis until after her suspension began that she should write her clients to advise them of the suspension. The only evidence that Ms. Davis informed Ms. Harris of her suspension is a letter dated January 22, 2001. (*See* Ex. 4). This letter was sent after Ms. Davis's suspension began and after she had already been terminated by Ms. Harris.

"If Ms. Harris had learned of the suspension earlier, it is reasonable to conclude that she would have terminated Ms. Davis sooner and would have employed another attorney in order to prosecute her case without interruption.

### III. Conclusions of Law

"At a hearing on a petition filed by the AGC pursuant to Md. Rule 16–757, the AGC has the burden of proving, by clear and convincing evidence, the averments of the petition. A respondent attorney must only establish an affirmative defense or a matter of mitigation or extenuation by a preponderance of the evidence.

"A. Mia Darbouze

"In connection with her representation in the Darbouze matter, the AGC has charged that Ms. Davis engaged in professional misconduct by violating the following Maryland Rules of Professional Conduct: Rules 1.1, 1.3, 1.4, 3.1, 3.2, 8.4 and 8.1. [Footnotes 10–16 omitted].

"The Court finds that the AGC has established by clear and convincing evidence that Ms. Davis violated Rules 1.1 and 1.3. Ms. Davis did not provide Ms. Darbouze with competent and diligent representation when she filed suit without having a viable basis for a cause of action against the Hospital and by failing to investigate the real name of the cleaning company.

"Ms. Davis also violated Rules 1.1 and 1.3 when she waited nearly nine months from the conclusion of the workers' compensation claim to file suit. There was no evidence presented to establish that such a delay was warranted. Additionally, by delaying the filing until the day prior to the expiration of the limitations period, Ms. Davis created the likelihood that a subsequent amendment to add the name of the cleaning company would have been unsuccessful. Furthermore, once suit was filed, three summonses were issued before the Hospital was finally served, which was more than seven months after suit was filed.[17] The Court also finds that Ms. Davis failed to act with diligence with regard to paying the sanction imposed against Ms. Darbouze because there is no evidence it was ever paid.

[17] As evidenced by the fact that Hospital was ultimately served by certified mail, it does not appear there was any difficulty in accomplishing service of process so as to explain the delay in service.

"The Court finds that Ms. Davis violated Rule 3.1, by filing suit against the Hospital without having a good faith basis to proceed and by naming ABC Corporation without making a reasonable investigation to determine the true defendant.

"The Court finds that Ms. Davis violated Rule 3.2 because she made no efforts to expedite the third party suit. After filing the case, she merely allowed it to languish in the court system.

"The Court also finds that Ms. Davis violated Rule 1.4 during the course of her representation of Ms. Darbouze. Ms. Darbouze's calls went unanswered, sometimes for more than a month at a time. This clearly shows a failure to communicate on the part of Ms. Davis. Ms. Davis also violated Rule 1.4 when she failed to keep Ms. Darbouze reasonably informed about the status of her case.

"Additionally, Ms. Davis violated both Rules 1.4 and 8.4(c) by misrepresenting the status of Ms. Darbouze's case to her. Ms. Davis knew or should have known that the court had actually closed the case on March 8, 1996, yet she led Ms. Darbouze to believe that the claim was still active.

"Furthermore, the Court is led to the inescapable conclusion that Ms. Davis created the March 23, 1995 letter (*See* Ex. 14) sometime after March 1995 to make it appear as if she had previously advised Ms. Darbouze that they would not be pursuing a claim against the cleaning company. Ms. Davis, therefore, violated Rule 8.4 by creating a false document.

Lastly, the Court finds that Ms. Davis violated Rule 8.1 by knowingly failing to respond to the AGC's request to provide a copy of the Darbouze file.

"B. Cher Harris

"In connection with her representation in the Harris matter, the AGC has charged that Ms. Davis engaged in professional misconduct by violating the following Maryland Rules of Professional Conduct: Rules 1.3, 1.4, and 1.16(a) and (d). [Footnotes 18–20 omitted].

"The Court finds that Ms. Davis violated Rule 1.3 by failing to conduct discovery when she had specific information that Mr. Mahoney's pay stubs likely were not an accurate representation of his income.[21] The Court also finds that Ms. Davis violated Rule 1.4 when she failed to advise Ms. Harris of her impending suspension.[22]

[21] At trial, the AGC argued that Ms. Davis violated this rule in other ways during the course of the Harris representation, however, the Court does not conclude that the evidence supports such a finding.

[22] Insofar as the AGC alleges that Ms. Davis violated Rule 1.4 in other ways, the Court concludes Ms. Davis did not.

"The Court further finds that Ms. Davis violated Rule 1.16(a). Under Rule 1.16(a)(1), a lawyer shall withdraw from the representation of a client if the representation will result in a violation of the Rules of Professional Conduct or other law. Although Ms. Davis did not actively represent Ms. Harris during her suspension (i.e., by going to court on her behalf), she continued to technically represent her because she held herself out as her attorney and her appearance remained entered in her case. Ms. Davis also violated subsection (a)(3) of the rule when she did not strike her appearance after Ms. Harris terminated her.

"Rule 1.16(d) sets forth what an attorney must do upon termination of representation. Ms. Davis's 90–day suspension was a termination of her representation because she was not allowed to practice law or represent clients during that time period. Ms. Davis violated Rule 1.16(d) because she failed to protect Ms. Harris's interests by giving her reasonable notice and to allow time for her to employ another attorney.[23] *See id.* at 327 (noting that a suspension terminates ethical representation and thus, Rule 1.16(d) becomes operative).

[23] The Court does not find that Ms. Davis violated this rule insofar as she did not forward Ms. Harris or her attorney a copy of her file, because she had advised Ms. Harris that the file was available, but it was never retrieved.

"IV. Conclusion

"Wherefore, it is this 4th day of February, 2003, found by the Circuit Court of Anne Arundel County, for the reasons

set forth herein, that the Respondent, Susan McMillan Davis, has violated the Code of Professional Responsibility, §§ 1.1, 1.3, 1.4, 1.16(a) and (d), 3.1, 3.2, 8.1 and 8.4."

Bar Counsel took no exceptions to Judge Hackner's findings of fact and conclusions of law and recommended disbarment as a sanction for Ms. Davis's conduct.[11] Bar Counsel finds Respondent's history of dishonesty in the practice of law to be of particular importance and urges us to find her morally unfit to continue in the practice of law. We previously suspended Ms. Davis, by unreported opinion, for ninety days for engaging in other conduct violating Rules 1.1, 1.3, 1.4, 8.1(b) and 8.4(c) and (d) of the Maryland Rules of Professional Conduct. *Attorney Grievance Comm'n v. Davis*, Misc. AG No. 1, September Term, 2000. She failed to act with requisite competence and diligence in her representation of a client with a potential workers' compensation claim by not filing any claim. *Davis*, slip op. at 19. She falsely told her client that a claim had been filed and continued to deceive the client for a period of several years. *Id.* When requested to respond to the client's complaint, Ms. Davis failed to answer Bar Counsel's letters, in violation of Rule 8.1(b). *Davis*, slip op. at 22. She later lied to Bar Counsel's investigator and testified falsely under oath before an Inquiry Panel, thereby violating Rule 8.4(c). *Davis*, slip op. at 23. The hearing judge in that case specifically determined that "the Respondent was not truthful when speaking to the [Commission's] investigator, when testifying before the Inquiry Panel, and to the Court." *Davis*, slip op. at 10.

---

11. Although taking no exceptions to the findings and conclusions, Bar Counsel does note two errors in the hearing judge's findings of fact. First, Bar Counsel notes a misstatement where the court referred to Ms. Davis when it meant to refer to Ms. Darbouze. The sentence *supra* at 144, "On May 21, 1998, Ms. Davis left another message . . . .", should refer to Ms. Darbouze as the caller.

The second mistake consists of a reference, *supra* at 16, to Rule 8.4(b) when in fact Bar Counsel charged Respondent with violating Rule 8.4(c), not 8.4(b).

We observed in our opinion in the prior case that "Respondent's conduct in the case *sub judice* is not simple neglect or the result of an error of judgment made in good faith." *Davis,* slip op. at 19. We overruled all of her exceptions and, in imposing the ninety-day suspension, noted "that, while we have generally suspended lawyers who for the first time have been found to have violated rules relating to competency, we have disbarred subsequent offenders." *Davis,* slip op. at 24.

Bar Counsel describes yet another prior instance of dishonesty resulting in Ms. Davis being reprimanded. Ms. Davis received a private reprimand issued by the Review Board, pursuant to former Maryland Rule BV7c, for failing to respond to four separate complaints and also for making misrepresentations about having mailed a response to one of the complaints. The Review Board found, subsequent to an Inquiry Panel proceeding, that Respondent violated Rule 8.1(b) of the Rules of Professional Conduct by failing to respond to Bar Counsel's demands for information in each of the four matters under review. The Review Board found additional violations of Rules 8.1(a) and 8.4(c) based on the Respondent's false statements, both to Bar Counsel and to an Inquiry Panel, that a letter responding to one of the complaints had been mailed on three prior occasions. The Review Board found that Ms. Davis fabricated a letter purporting to demonstrate that she had responded to Bar Counsel's first three requests for a response.

Bar Counsel concludes that the matter currently before this Court involves allegations of misconduct similar to the misconduct for which Ms. Davis was sanctioned previously. Such repeated misconduct shows a blatant disregard for the Rules of Professional Conduct and, urges Bar Counsel, requires that the offending party be disbarred.

Ms. Davis presented several exceptions to the hearing judge's findings of fact and conclusions of law in the present case and, based on these exceptions, suggests that we dismiss the disciplinary proceedings in their entirety. She disputes numerous findings of fact found by the hearing judge to have

been established by clear and convincing evidence. Ms. Davis argues that Ms. Darbouze consulted with her regarding many matters other than the hospital case and she therefore takes exception to the finding that "the case" referred to in various telephone messages referred to the hospital case. She takes further exception to Judge Hackner's conclusion that the 23 March 1995 letter was created after Ms. Darbouze complained to the AGC and proffers instead that she did in fact send the letter on 23 March 1995. Ms. Davis also claims that although she did promise to give Sterling Fletcher, the AGC's investigator, a copy of the Darbouze file, she was under the impression that he already had a copy.

Ms. Davis takes exception to multiple findings of fact regarding the Harris complaint as well. She takes exception to the hearing judge's finding that she did not inform Ms. Harris of her pending suspension. She contends that she did inform Ms. Harris of her suspension before it took effect and that she also notified Ms. Harris of her suspension by letter sent at the end of January and counseled her to get alternative representation. Respondent argues that Ms. Harris had additional counsel for her proceeding for child support in the Circuit Court for Howard County. She also excepts to the failure of Judge Hackner to note that the settlement ultimately reached by Ms. Harris was for $1,000.00 without health insurance, the same terms Ms. Davis recommended to Ms. Harris.

Respondent takes exception to every conclusion of law reached by Judge Hackner. Ms. Davis argues that she was working to protect the interests of Ms. Darbouze although she failed to find the name or confirm the existence of the third party cleaning company. She argues that Ms. Darbouze was not prejudiced in any way by the time lapse between the determination by the Worker's Compensation Commission and the filing of the lawsuit. Ms. Davis further contends that it is not "crystal clear" that one cannot file a lawsuit against an unknown party and she therefore did not violate Rule 3.1 in naming the ABC Corporation as a defendant in Ms. Darbouze's lawsuit. Respondent also excepts to the conclusion that she violated Rule 3.2 because she made no effort to

expedite a third party suit. She contends instead that she pursued the matter until she informed Ms. Darbouze that there was no reasonable expectation of recovery. She excepts to the judge's conclusion that Rules 1.4 and 8.4 were violated as a result of her misrepresentations to Ms. Darbouze. She claims that she accurately informed Ms. Darbouze that she was no longer working on her case. Ms. Davis excepts to the conclusion that she violated Rule 8.4 by creating a false document. She contends that she lacked the ability to create such a document and, in fact, did not create it.

Concerning the Harris complaint, Ms. Davis takes exception to the hearing judge's conclusion that she violated Rule 1.3 by failing to conduct discovery to determine Mr. Mahoney's undisclosed income. She finds sustenance in the fact that the subsequent attorney representing Ms. Harris settled the matter on the same terms recommended by Ms. Davis. She takes further exception to the finding that she failed to advise Ms. Harris of her pending suspension. She claims to have told Ms. Harris of her suspension at the time Ms. Harris requested that Ms. Davis act as her lawyer in the case handled by the Howard County State's Attorney's office to collect unpaid child support. She argues that she confirmed that in a letter to Ms. Harris describing the prior conversation. Ms. Harris advised Ms. Davis of her new counsel less than a week after Ms. Davis's suspension began and Respondent suggests that those facts preclude the possibility that she violated Rule 1.16. Ms. Davis takes final exception to the judge's finding that she violated Rule 1.16(d) by continuing to represent Ms. Harris after her suspension took effect. She contends that she did not represent Ms. Harris after she was suspended.

## II.

### A. *Standard of Review*

This Court exercises original jurisdiction over attorney discipline proceedings. *Attorney Grievance Comm'n v. Blum,* 373 Md. 275, 293, 818 A.2d 219, 230 (2003); *Attorney Grievance Comm'n v. Harris,* 371 Md. 510, 539–40, 810 A.2d

457, 474–75 (2002). We conduct an independent review of the record, accepting the hearing judge's findings of fact unless clearly erroneous. *Attorney Grievance Comm'n v. Garfield,* 369 Md. 85, 97, 797 A.2d 757, 763 (2002); *Attorney Grievance Comm'n v. Wallace,* 368 Md. 277, 288, 793 A.2d 535, 542 (2002). We will not disturb the factual findings of the hearing judge if they are based on clear and convincing evidence. *Attorney Grievance Comm'n v. Monfried,* 368 Md. 373, 388, 794 A.2d 92, 100 (2002). Our review of the hearing judge's conclusions of law is *de novo. Attorney Grievance Comm'n v. McLaughlin,* 372 Md. 467, 493, 813 A.2d 1145, 1160 (2002); *Attorney Grievance Comm'n v. Dunietz,* 368 Md. 419, 428, 795 A.2d 706, 711 (2002).

## B. *Respondent's Exceptions to Findings of Fact*

The hearing judge aptly observed that Maryland Rule 16–757(b) [12] requires the AGC to prove the averments of the complaint by clear and convincing evidence. Respondent must only establish an affirmative defense or a matter of mitigation or extenuation by a preponderance of the evidence. Md. Rule 16–757(b). Maryland Rule 16–759 requires this Court, when exceptions to the hearing judge's findings are taken properly, to determine whether the findings of fact have been proven by the requisite standards of proof set out in Rule 16–757(b). [13]

---

12. Maryland Rule 16–757(b) provides: "The petitioner has the burden of proving the averments of the petition by clear and convincing evidence. A respondent who asserts an affirmative defense or a matter of mitigation or extenuation has the burden of proving the defense or matter by a preponderance of the evidence."

13. Maryland Rule 16–759(b) states:
 (1) Conclusions of law. The Court of Appeals shall review de novo the circuit court judge's conclusions of law.
 (2) Findings of fact. (A) If no exceptions are filed. If no exceptions are filed, the Court may treat the findings of fact as established for the purpose of determining appropriate sanctions, if any.
 (B) If exceptions are filed. If exceptions are filed, the Court of Appeals shall determine whether the findings of fact have been proven by the requisite standard of proof set out in Rule 16–757(b).

Ms. Davis's contention fails that the hearing judge incorrectly found that the references by Ms. Darbouze to "the case" in her various telephone messages left for Ms. Davis referred to the hospital case. The hearing judge found that Ms. Darbouze indeed did telephone Ms. Davis to discuss several other matters, but none of them properly could be termed a "case," as that term tends to refer to a legal action actually commenced and Ms. Darbouze had no other "cases" pending with Ms. Davis. Ms. Davis does not suggest that there were any other matters she was handling for Ms. Darbouze that had been filed.

■ Ms. Davis also takes issue with the finding that the 23 March 1995 letter was not authentic and had not been sent by Ms. Davis to Ms. Darbouze as Ms. Davis asserted. Ms. Davis states that there was no evidence before the hearing judge that a third party could have created the letter and she further asserts that she lacked the means to create the letter in 2001 as the hearing judge found. While she is correct in observing that there is no evidence of a third party creating the letter, the hearing judge noted adequate circumstantial evidence indicating that the letter was fabricated by Ms. Davis sometime in 2001, after Ms. Darbouze filed her complaint. Ms. Darbouze claimed she never received the letter and the hearing judge found her actions after March 1995 to be consistent with not having received the letter. Ms. Davis's actions after March 1995 are inconsistent with her claim that she sent the letter because she continued to represent to Ms. Darbouze that her case was still active. We agree with the hearing judge's conclusion that "[i]f Ms. Darbouze had been informed that her case was closed, it is unlikely that she would have contacted Ms. Davis repeatedly over several years to inquire about the status of her case," and correspondingly, if Ms. Davis has sent the letter and closed Ms. Darbouze's file, "she would not have led Ms. Darbouze to believe her case still

---

The Court may confine its review to the findings of fact challenged by the exceptions. The Court shall give due regard to the opportunity of the hearing judge to assess the credibility of witnesses.

active; rather, she would have reminded Ms. Darbouze that her case had been closed or sent her a copy of the March 1995 letter." Ms. Davis's exception to the finding that she fabricated the 23 March 1995 letter is overruled.

Ms. Davis also excepted to the finding that the AGC investigator, Mr. Fletcher, requested the Darbouze file and Ms. Davis failed ever to provide the file to Mr. Fletcher despite several subsequent requests from him to do so. Ms. Davis merely proffers that she was under the impression that Mr. Fletcher already had a copy of the file. That assertion is nonsensical given his repeated requests in writing and via telephone conversation that Ms. Davis provide him with the Darbouze file. That exception also is overruled.

Ms. Davis's exceptions regarding the findings of fact relative to the Harris complaint are likewise overruled. We conclude that the hearing judge's findings of fact are supported by clear and convincing evidence. Ms. Davis presents no evidence to challenge the hearing judge's findings that she did not notify Ms. Harris of her suspension in a timely manner, failed to assist Ms. Harris with her case in Circuit Court, or drafted a consent order despite Ms. Harris's repeated and prior objection to the proposed terms of that order. Ms. Davis merely argues that the ultimate settlement in the case was consistent with her prediction. That the financial number ended up being the same is no excuse for not responding to the interests of her client. Ms. Davis also defends her action regarding the Circuit Court proceedings by pointing out that at the time of the proceeding Ms. Harris was represented by the State's Attorney. That the State's Attorney was prosecuting the matter is irrelevant to the hearing judge's finding that Ms. Davis failed to attend the hearing and failed to contact the State's Attorney as Ms. Harris requested.

## C. *Conclusions of Law*

Accepting the findings of the hearing judge to be proven adequately, we proceed to the hearing judge's conclusions of law. We find that the facts are sufficient to support the

conclusion that Ms. Davis violated Rules 1.1, 1.3, 1.4, 3.1, 3.2, 8.1(b), 8.4(a) and (c), and 1.16(a) and (d) in her representation of Ms. Darbouze and Ms. Harris. Based on her history of violating the Rules of Professional Conduct and her current proven violations, we find the appropriate sanction to be disbarment.

### Rules 1.1 and 1.3

We turn first to Ms. Davis's violation of Rules 1.1 and 1.3. In *Attorney Grievance Comm'n v. Pinkney*, 311 Md. 137, 141, 532 A.2d 1367, 1369 (1987), this Court disciplined an attorney who led her client to believe that she had filed a lawsuit on the client's behalf when in fact she had not. We held:

> Respondent violated DR 6–101(A)(3)[14] by neglecting a legal matter entrusted to her. Respondent admitted that she set Ms. Manner's file aside from all of the others in her office and ignored it unless she heard from Ms. Manners. She also failed to adequately investigate and sufficiently research the matter to either establish that there was a cause of action or dissuade Ms. Manners from pursuing the claim if there was insufficient basis to file suit.

*Id.* We found in *Attorney Grievance Comm'n v. Cohen*, 361 Md. 161, 174, 760 A.2d 706, 713 (2000), that the respondent in that matter violated Rule 1.3 through his repeated failure to return telephone calls to his client, by failing to pay a court fee that prevented the processing of his client's motion, and by claiming to have sent various letters to his clients which were not actually received by them. We have stated before that "[t]he quality of a lawyer's representation is measured by the degree of legal knowledge, skill, thoroughness, and preparation the lawyer brings to the representation." *Attorney Grievance Comm'n v. Mooney*, 359 Md. 56, 85, 753 A.2d 17, 32 (2000). We also observed that the line between incompetence and mere neglect "depends upon what reasonably is necessary in the circumstances." *Id.*

---

**14.** The comment to MRPC 1.3 cites DR 6–101 as its earlier Code counterpart. DR 6–101(A)(3) required that a lawyer not "neglect a matter entrusted to him."

■ Ms. Davis filed suit without having a viable basis for a cause of action against the Hospital and by failing to investigate the proper name of the cleaning company. She waited nearly nine months from the conclusion of the worker's compensation claim to file suit the day before the limitations period expired. By so doing, she made it unlikely that an amendment to add the name of the cleaning company would be successful. Ms. Davis failed to act with diligence in serving summonses on the Hospital and with regard to paying the sanction imposed against Ms. Darbouze. The evidence indicates that although Ms. Davis literally may not have put Ms. Darbouze's file aside, she did not pursue actively Ms. Darbouze's claims against the Hospital and cleaning company. There is no evidence to indicate that Ms. Davis acted with thoroughness, preparedness, or diligence in her representation of Ms. Darbouze.

■ Ms. Davis offers, in her defense, that Ms. Darbouze's interests were not prejudiced by her acts or failure to act. We observed, on consideration of an exception asserting the "no harm, no foul" defense, the attorney's neglect was still established. *Attorney Grievance Comm'n v. Zdravkovich*, 362 Md. 1, 25, 762 A.2d 950, 963 (2000). Ms. Davis's argument that no prejudice resulted from her negligence is insufficient to derail our determination that she did not exercise diligence or competence in her representation of Ms. Darbouze's interests.

■ Her representation of Ms. Harris's interests was likewise inadequate. She violated Rule 1.3 by not conducting discovery to determine whether Mr. Mahoney's pay stubs were an accurate representation of his income, despite information that they likely were not a complete representation and despite repeated exhortation to do so by Ms. Harris.

### Rule 1.4

■ An attorney is required by Rule 1.4 to engage in reasonable communication with his or her client regarding the status of his or her case. Rule 1.4 also requires that an

attorney comply with requests from the client for information about his or her case. Ms. Davis did not maintain such a dialogue with either Ms. Darbouze or Ms. Harris. Ms. Darbouze's calls went unanswered, sometimes for a month at a time. Ms. Davis misrepresented to Ms. Darbouze the status of her case, leading her to believe it was active when in fact it was closed. Ms. Davis violated Rule 1.4 by failing to inform Ms. Harris of her suspension in a timely manner.

Ms. Davis claims that she did not violate Rule 1.4 in her dealings with Ms. Darbouze because she sent Ms. Darbouze a letter on 23 March 1995 informing her that the case had been closed. Because we find that Ms. Davis fabricated the March 1995 letter to Ms. Darbouze, we conclude that this exception is unavailing.

### Rule 1.16

Rule 1.16(a) requires an attorney to withdraw from representing a client if the representation will result in violation of any of the Rules of Professional Conduct. We have indicated elsewhere that suspension of an attorney terminates ethical representation. *Attorney Grievance Comm'n v. James*, 340 Md. 318, 327, 666 A.2d 1246, 1250 (1995). Rule 1.16(d) provides that, upon termination of representation, an attorney must continue to protect the client's interests by giving reasonable notice to the client and allow the client the opportunity to employ other counsel.

Ms. Davis's ninety-day suspension terminated her representation of Ms. Harris. Ms. Davis violated subsection (a) by continuing to hold herself out as Ms. Harris's attorney during her suspension and by not striking her appearance when Ms. Harris did terminate her. She failed to give Ms. Harris reasonable notice and to allow her time to employ other counsel. Ms. Davis clearly violated the dictates of Rule 1.16.

### Rule 3.1

Rule 3.1 is violated when "the lawyer is unable . . . to make a good faith argument on the merits of the action taken." Rule 3.1, comment. In *Zdravkovich*, we imposed disciplinary

measures on an attorney who attempted to remove his client's state action to federal court although "a reading of [the relevant federal statute] would have made it crystal clear to respondent that, under the circumstances, he could not remove the Texas action to a federal court in Maryland." 362 Md. at 29, 762 A.2d at 965. In *Pinkney*, we found a violation of the MRPC when an attorney failed to investigate a matter, determine what statute of limitations applied, and otherwise failed to engage in adequate preparation. 311 Md. at 141, 532 A.2d at 1369.

■ The hearing judge concluded that Ms. Davis violated Rule 3.1 by filing suit against the Hospital without a good faith basis from which to proceed and by naming ABC Corporation without making reasonable investigation to determine the actual defendant. In her defense, presumably referring to the language used in *Zdravkovich*, Ms. Davis claims that it was not "crystal clear" that one cannot file a lawsuit against an unknown party. There is no evidence that Ms. Davis made any attempts to discover the true identity of the cleaning company other than her initial feeble investigation. She did not file any written discovery, note any depositions, or take any other steps in that regard. Furthermore, Ms. Davis did not conduct any research into whether she could proceed against the Hospital in a third party claim before filing suit. Although there are exceptions to where a third party suit can be maintained against an employer, the Workers Compensation Act is generally the exclusive remedy for an employee against an employer.[15] Ms. Darbouze was awarded permanent partial disability as a result of proceedings before the Worker's Compensation Commission and there is no indication that Ms. Darbouze's claim fell into any of the named exclusions to that general limitation.[16] We agree with the hearing

---

15. Maryland Code, (1991, 1999 Repl.Vol.), Labor & Employment Article, § 9–509(a) explicitly states, "[e]xcept as otherwise provided in this title, the liability of an employer under this title is exclusive."

16. The exceptions enumerated in § 9–509(c) and (d) provide additional recourse when an employer fails to secure compensation or when the

judge that Ms. Davis violated Rule 3.1 in her representation of Ms. Darbouze.

### Rule 3.2

██ After filing the ill-fated suit, Ms. Davis proceeded to ignore it largely. The Hospital was not served with the summons until seven months after she filed suit. After the Hospital was served, its attorneys made numerous attempts to contact her in order to request that she voluntarily dismiss the suit as it was barred by the Workers Compensation Act. Ms. Davis was unresponsive to those attempts. Ms. Davis also failed to respond to the Hospital's Motion to Dismiss, causing the claim to be dismissed and a $250 sanction levied on Ms. Darbouze. Ms. Davis hardly could have done more to ignore Ms. Darbouze's claim after she filed suit. It is clear to us that her behavior violated the mandate of Rule 3.2—"A lawyer shall make reasonable efforts to expedite litigation consistent with the interests of the client."

### Rule 8.4

██ Ms. Davis violated Rule 8.4(c) by fabricating the 23 March 1995 letter in an attempt to mislead Bar Counsel into believing that she had advised Ms. Darbouze that she would not be pursuing a claim against the cleaning company and to obscure the fact that Ms. Davis misrepresented the status of the case to Ms. Darbouze on multiple occasions. We repeatedly have recognized the unparalleled importance of honesty to the practice of law. We have stated that "intentional dishonest conduct is closely entwined with the most important matters of basic character to such a degree as to make intentional dishonest conduct by a lawyer almost beyond excuse." *Attorney Grievance Comm'n v. Angst*, 369 Md. 404, 420, 800 A.2d 747, 757 (2002). We further observed that "[h]onesty and dishonesty are, or are not, present in an

employer acted with deliberate intent to injure or kill the employee. The record provides no evidence that either is applicable to Ms. Darbouze.

attorney's character." *Id.* Ms. Davis's actions in this matter and prior matters indicate that dishonesty is present in her character. By creating a false document and seeking to pass it off as genuine, Ms. Davis evidenced a clear disregard for the basic tenets of ethical behavior. We agree with the hearing judge that she violated Rule 8.4(c).

### Rule 8.1

 Finally, Ms. Davis violated Rule 8.1 by knowingly failing to respond to the AGC's request to provide a copy of the Darbouze file to Mr. Fletcher. Despite numerous attempts made by Mr. Fletcher to obtain it, Ms. Davis never provided the file. Rule 8.1(b) provides that a lawyer in connection with a disciplinary matter shall not "knowingly fail to respond to a lawful demand for information" from a disciplinary authority. We observed in an earlier case that "[t]he practice of law carries with it special responsibilities of self-regulation, and attorney cooperation with disciplinary authorities is of the utmost importance to the success of the process and the integrity of the profession." *Attorney Grievance Comm'n v. Fezell,* 361 Md. 234, 255, 760 A.2d 1108, 1119 (2000). Ms. Davis does not assert that the demand was unlawful, nor does she dispute her noncompliance with Mr. Fletcher's requests. Her refusal to cooperate and flimsy attempt to justify that refusal by claiming she thought he already had a copy of the file, reflect poorly on her integrity and honesty. We find that her failure to provide the AGC with Ms. Darbouze's file violated Rule 8.1(b). *See Fezell,* 361 Md. 234, 760 A.2d 1108 (finding that an attorney's failure to comply with "lawful demands" from Bar Counsel for information violated Rule 8.1); *Attorney Grievance Comm'n v. David,* 331 Md. 317, 628 A.2d 178 (1993) (finding an attorney's failure to answer Bar Counsel's requests for information to be a violation of Rule 8.1).

### D. Sanctions

 Our consideration of the appropriate disciplinary measure to be taken in any given case involving violation of

the Rules of Professional Conduct is guided by our interest in protecting the public and the public's confidence in the legal profession. *Attorney Grievance Comm'n v. Powell,* 369 Md. 462, 474, 800 A.2d 782, 789 (2002). The purpose of such proceedings is not to punish the lawyer, but should deter other lawyers from engaging in similar conduct. *Mooney,* 359 Md. at 96, 753 A.2d at 38. The public is protected when we impose sanctions that are commensurate with the nature and gravity of the violations and the intent with which they were committed. *Attorney Grievance Comm'n v. Awuah,* 346 Md. 420, 435, 697 A.2d 446, 454 (1997).

We find that the appropriate sanction for Ms. Davis's ethical violations is disbarment. We find that the aggregation of Ms. Davis's prior offenses and these violations establish a pattern of deceitful conduct unbecoming to a member of the legal profession. We cautioned Ms. Davis in her earlier proceeding before this Court that "while we have generally suspended lawyers who for the first time have been found to have violated rules relating to competency, we have disbarred subsequent offenders." *Davis,* slip op. at 24. We found that Ms. Davis failed to competently and diligently represent her client, failed to communicate with her client regarding the status of her case, and was dishonest in the AGC fact-finding process. *Id.* We have found her culpable for the identical behaviors in her representation of Ms. Darbouze and Ms. Harris and in her dealings with the AGC regarding this proceeding.

Our decision to disbar Ms. Davis is consistent with other cases involving similar behavior. *See, e.g., Attorney Grievance Comm'n v. Faber,* 373 Md. 173, 817 A.2d 205 (2003) (repeated failure to respond to AGC requests for information, client neglect, and prior disciplinary history provided sufficient basis to disbar errant attorney); *Attorney Grievance Comm'n v. Fallin,* 371 Md. 237, 808 A.2d 791 (2002) (disbarring attorney for failure to communicate with clients and diligently pursue their claims and in light of the history of disciplinary measures taken against him); *Attorney Grievance Comm'n v. Manning,*

**168**

318 Md. 697, 569 A.2d 1250 (1990) (finding neglect of client matters, failure to communicate with clients, and failure to cooperate in disciplinary proceedings to warrant disbarment); *Attorney Grievance Comm'n v. Montgomery*, 318 Md. 154, 567 A.2d 112 (1989) (holding that multiple acts of negligent misrepresentation, unavailability to and failure to communicate with clients, and failure to withdraw from cases after being discharged warranted disbarment).

*IT IS SO ORDERED; RESPONDENT SHALL PAY ALL COSTS AS TAXED BY THE CLERK OF THIS COURT, INCLUDING COSTS OF ALL TRANSCRIPTS, PURSUANT TO MARYLAND RULE 16-761, FOR WHICH SUM JUDGMENT IS ENTERED IN FAVOR OF THE ATTORNEY GRIEVANCE COMMISSION AGAINST SUSAN MCMILLAN DAVIS.*