800 A.2d 782

ATTORNEY GRIEVANCE COMMISSION OF MARYLAND,

v.

Robert D. POWELL.

Misc. AG No. 1, Sept. Term, 2001.

Court of Appeals of Maryland.

June 13, 2002.

Melvin Hirshman, Bar Counsel and Dolores O. Ridgell, Asst. Bar Counsel for the Atty. Grievance Com'n of Maryland, for petitioner.

Robert D. Powell, Respondent, pro se.

Argued before BELL, C.J., ELDRIDGE, RAKER, WILNER, CATHELL, HARRELL, and BATTAGLIA, JJ.

RAKER, Judge.

The Attorney Grievance Commission, acting through Bar Counsel, filed a petition with this Court for disciplinary action against Robert D. Powell, respondent, alleging violations of the Maryland Rules of Professional Conduct (hereinafter "MRPC"). The Commission charged respondent with violating MRPC Rules 1.15(a) (Safekeeping Property),[1] Rule 16–607 (Commingling of Funds),[2] 8.4(c) and (d) (Misconduct),[3] and

---

1. Maryland Rule 1.15(a) (Safekeeping Property) provides as follows:
   "A lawyer shall hold property of clients or third persons that is in a lawyer's possession in connection with a representation separate from the lawyer's own property. Funds shall be kept in a separate account maintained pursuant to Title 16, Chapter 600 of the Maryland Rules. Other property shall be identified as such and appropriately safeguarded. Complete records of such account funds and of other property shall be kept by the lawyer and shall be preserved for a period of five years after termination of the representation."

2. Maryland Rule 16–607 (Commingling of Funds) provides as follows:
   "a. General Prohibition. An attorney or law firm may deposit in an attorney trust account only those funds required to be deposited in that account by Rule 16–604 or permitted to be so deposited by section b. of this Rule.
   b. Exceptions.
   1. An attorney or law firm shall either (A) deposit into an attorney trust account funds to pay any fees, service charges, or minimum balance required by the financial institution to open or maintain the account, including those fees that cannot be charged against interest due to the Maryland Legal Services Corporation Fund pursuant to Rule 16–610(b)(1)(D), or (B) enter into an agreement with the financial institution to have any fees or charges deducted from an operat-

8.1(a) and (b) (Bar Admission and Disciplinary Matters).[4] This Court referred the matter to Judge Paul A. McGuckian of the Circuit Court for Montgomery County to conduct an evidentiary hearing and to make findings of fact and conclusions of law in accordance with Maryland Rules 16 709(b) and 16–711(a).

Judge McGuckian made the following Findings of Fact and Conclusions of Law.

## *"Procedural Background*

"On February 27, 2001, the Court of Appeals of Maryland ordered that the charges contained in the Petition for Disciplinary Action filed by the Attorney Grievance Com-

---

ing account maintained by the attorney or law firm. The attorney or law firm may deposit into an attorney trust account any funds expected to be advanced on behalf of a client and expected to be reimbursed to the attorney by the client.

2. An attorney or law firm may deposit into an attorney trust account funds belonging in part to a client and in part presently or potentially to the attorney or law firm. The portion belonging to the attorney or law firm shall be withdrawn promptly when the attorney or law firm becomes entitled to the funds, but any portion disputed by the client shall remain in the account until the dispute is resolved.

3. Funds of a client or beneficial owner may be pooled and commingled in an attorney trust account with the funds held for other clients or beneficial owners."

3. Maryland Rule 8.4 provides as follows:

"It is professional misconduct for a lawyer to:

(c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation;

(d) engage in conduct that is prejudicial to the administration of justice."

4. Maryland Rule 8.1 (Bar Admission and Disciplinary Matters) provides as follows:

"An applicant for admission or reinstatement to the bar, or a lawyer in connection with a bar admission application or in connection with a disciplinary matter, shall not:

(a) knowingly make a false statement of material fact; or

(b) fail to disclose a fact necessary to correct a misapprehension known by the person to have arisen in the matter, or knowingly fail to respond to a lawful demand for information from an admissions or disciplinary authority, except that this Rule does not require disclosure of information otherwise protected by Rule 1.6."

mission of Maryland, Petitioner, in this matter be transmitted to this Court to be heard and determined in accordance with Maryland Rule 16–709 *et seq.* On April 20, 2001, the Respondent, Robert D. Powell, was served with the Petition for Disciplinary Action, the Order of the Court of Appeals, a Writ of Summons issued by the Circuit Court for Montgomery County directing Respondent to file a written response to the Petition within fifteen (15) days of service. On April 20, 2001, Respondent was also served with Petitioner's Interrogatories, Requests for Admissions of Fact and Genuineness of documents and a Request for Production of Documents. On May 14, 2001, Respondent's Answer was filed.

"On June 14, 2001, Petitioner filed a Motion for Sanctions Upon Respondent's Failure of Discovery. Respondent did not oppose this Motion. On July 27, 2001, this Court granted Petitioner's Motion and entered an Order directing that the Petitioner's Request for Admission of Facts and Genuineness of Documents be admitted, that the responsive pleading filed by Respondent be stricken, that Respondent be prohibited from introducing at trial any evidence to oppose the claims of Petitioner as set forth in the Petition for Disciplinary Action, and that judgment by default be entered against the Respondent and in favor of the Petitioner finding that the Rules of Professional Conduct have been violated as alleged in the Petition for Disciplinary Action.

### *"Findings of Fact*

"This Court finds the following facts have been established by clear and convincing evidence:

"The respondent was admitted to the Maryland Bar on April 2, 1974. He currently maintains an office for the practice of law in Montgomery County, Maryland.

"On or about June 10, 1998, Bar Counsel received a notice dated June 5, 1998 from Crestar Bank of an overdraft on an attorney trust account entitled 'Law Offices of Robert D. Powell, P.C.,' account number 209300191 (hereafter 'the trust account'). Thereafter, on or about June 11, 1998, Bar

Counsel sent a copy of the overdraft notice to the respondent and requested that respondent provide a full explanation for the overdraft and financial records such as client ledger cards, deposit slips, canceled checks, and monthly bank statements for each month from January 1998 to June 1998. The respondent was also asked to respond within ten (10) days of the receipt of Bar Counsel's letter. Respondent received Bar Counsel's letter on June 15, 1998.

"On or about June 22, 1998, respondent wrote to Bar Counsel and falsely represented that the overdraft was the result of a bank error, and that he had asked the bank to verify this information, withdraw its Notification of Account Status of June 5, 1998, and communicate directly with Bar Counsel's office. Thereafter, Bar Counsel received no communication from Crestar Bank.

"On or about July 17, 1998, Bar Counsel sent another letter to respondent and advised that the file on the overdraft would remain open until supporting documentation was forwarded to Bar Counsel. This letter was received by respondent on August 11, 1998. Bar Counsel did not receive a reply from respondent, and, on or about August 24, 1998, Bar Counsel sent another letter to respondent and advised that, if Bar Counsel did not receive an explanation for the overdraft within ten (10) days, he would docket the file because of respondent's failure to respond. The letter was delivered to the respondent on August 24, 1998.

"Bar Counsel received a letter from respondent dated September 1, 1998 in which respondent again falsely represented that the overdraft was the result of a bank error. Respondent's explanation was that on June 5, 1998, he went to the bank to make a deposit. Due to a long line, a bank officer agreed to complete the transaction for him. He left a check and a deposit ticket with this bank employee at about 10 a.m. on Friday, June 5, 1998. That transaction, however, was not credited to the account until Monday, June 8, 1998.

"Respondent failed to provide with his letter of September 1, 1998 the documents previously requested by Bar

Counsel in letters dated June 22, July 11, July 27 and August 24, 1998.

"On September 23, 1998, Bar Counsel sent another letter to respondent notifying him that the matter had been formally docketed and an investigation would be conducted. Bar Counsel for the fourth time requested monthly bank statements, deposit slips, client ledger cards, and canceled checks for the trust account and asked that respondent identify the source/sources of funds deposited into the trust account for the period January 1 through September 23, 1998. Respondent failed to respond to this letter.

"On October 16, 1998, Bar Counsel sent another letter to respondent and requested for the fifth time that respondent provide, within five (5) days, the financial records itemized in the September 23, 1998 letter. On or about October 28, 1998, respondent sent Bar Counsel a letter and enclosed with this letter copies of bank statements for the trust account for the period January through September 1998 and photocopies of the front and back of canceled checks covered by the statements.

"In his letter of October 28, 1998, respondent acknowledged that he deposited personal funds to the trust account. Respondent falsely stated in this letter that there were no client funds in the account during the period in question. In this letter, respondent also represented that he had deposited funds into the trust account from the sale of property owned by his father. These deposits were made in December 1997 and January 1998.

"Respondent represented in the October 28, 1998 letter that he thereafter transferred some of the funds to accounts in his and his father's name at Crestar Bank. Respondent falsely represented that these accounts were jointly titled.

"Bank records obtained pursuant to Bar Counsel subpoena demonstrate that the transactions conducted on June 5, 1998 by Respondent were as follows: Respondent wrote a check in the amount of $2,500 payable to himself on Crestar Bank account number 86405–5684, entitled 'Ralph Piccola POA Robert D. Powell'; deposited $1,100 of these funds to

the trust account; deposited $1,200 of these funds to an account at Crestar Bank titled 'Law Office of Robert D. Powell, P.C.'; and received $200 in cash. The records reflect that these transactions occurred at approximately 4:05 p.m. Ralph Piccola is the name of the respondent's late father.

"Bank records obtained pursuant to Bar Counsel subpoena also reveal that respondent continued to use the account titled in his late father's name, an interest bearing money market account, long after his father's death on or about March 2, 1998. Respondent failed to remove his father's social security number as the tax identification number on this account.

"The bank records also demonstrated that respondent used both the trust account and the account titled in his father's name for personal and business expenses, thereby misrepresenting the character and ownership of these accounts in order to avoid the claims of creditors.

"Respondent failed to respond in a timely manner to Bar Counsel's requests for records relating to his trust account.

"Respondent failed to open an estate to probate the funds remaining in the account titled in his father's name at the time of his father's death.

### *"Conclusions of Law*

"The Court finds clear and convincing evidence that the following Maryland Rules of Professional Conduct (MRPC) were violated:

"The respondent deposited earned fees and money he received from his father into a bank account he titled as an attorney trust account. He used this account for personal and business purposes. Such conduct constitutes clear and convincing evidence of commingling in violation of both MRPC 1.15(a) and Maryland Rule 16–607.

"Not only did respondent misuse his attorney trust account, he also used an account titled in the name of his father for personal and business purposes after his father's death in March 1998, thereby misrepresenting the owner-

ship of the funds in both these accounts. Even though there were funds in the father's account at the time of his death, respondent failed to open an estate to probate these assets. This Court finds that respondent engaged in this conduct in an effort to hide assets from creditors' collection efforts. Such conduct provides clear and convincing evidence that Respondent engaged in conduct involving dishonesty, fraud, deceit and or misrepresentation in violation of MRPC 8.4(c). Such deceptive and dishonest conduct by a member of the Bar has a negative impact on the image and perception of the legal profession and is clear and convincing evidence that respondent engaged in conduct prejudicial to the administration of justice in violation of MRPC 8.4(d).

"When asked to explain the cause of the overdraft on his attorney trust account, the respondent first delayed in providing the requested records and then, in his letter of October 28, 1998, made false statements of material fact to Bar Counsel concerning the transactions conducted on June 5, 1998. His representation that he had a single deposit to make on the morning of Friday, June 5, 1998, which, due to a bank error, did to get credited until the following Monday was shown to be false by the bank's records which establish that he made two deposits and a cash withdrawal after 4 P.M. on Friday, June 5, 1998. There is clear and convincing evidence that respondent violated MRPC 8.1(a) and (b) by knowingly making false representations of material facts and failing to timely respond to demands for information from Bar Counsel."

Throughout Bar Counsel's investigation, respondent failed to provide Bar Counsel with requested documents related to the trust account and his financial records. After Bar Counsel filed the Petition for Disciplinary Action, respondent filed an answer, but failed to respond to the request for admission of facts and genuineness of documents, interrogatories, or request for production of documents. It is apparent from the record, findings of fact and conclusions of law that as a result of respondent's blatant disregard of Bar Counsel's request for discovery in these proceedings, Judge McGuckian granted the relief sought by Bar Counsel and prohibited respondent from

presenting any evidence at the proceeding.[5]  Bar Counsel then introduced into evidence documents marked as Exhibit No. 1, a request for admission of fact and genuineness of documents, and proposed findings of fact and conclusions of law.  Judge McGuckian permitted respondent to argue in response to the proposed findings of fact and conclusions of law, but precluded respondent from testifying or otherwise presenting any evidence.  Judge McGuckian found that the averments of Bar Counsel in its petition were well supported by Exhibit No. 1.[6]

The matter was set for a hearing before this Court on February 28, 2002.  Neither party filed any exceptions to

---

**5.** After a petition for disciplinary action has been filed, discovery is governed by Title 2, Chapter 400.  *See* Rule 16–756.  Rule 2–433 provides sanctions for discovery failures.  Rule 2–433(a) provides as follows:

"(a) For certain failures of discovery.  Upon a motion filed under Rule 2–432(a), the court, if it finds a failure of discovery, may enter such orders in regard to the failure as are just, including one or more of the following:

(1) An order that the matters sought to be discovered, or any other designated facts shall be taken to be established for the purpose of the action in accordance with the claim of the party obtaining the order;.

(2) An order refusing to allow the failing party to support or oppose designated claims or defenses, or prohibiting that party from introducing designated matters in evidence; or.

(3) An order striking out pleadings or parts thereof, or staying further proceeding until the discovery is provided, or dismissing the action or any part thereof, or entering a judgment by default that includes a determination as to liability and all relief sought by the moving party against the failing party if the court is satisfied that it has personal jurisdiction over that party.  If, in order to enable the court to enter default judgment, it is necessary to take an account or to determine the amount of damages or to establish the truth of any averment by evidence or to make an investigation of any matter, the court may rely on affidavits, conduct hearings or order references as appropriate, and, if requested, shall preserve to the plaintiff the right of trial by jury."

**6.** Respondent argued that the proposed findings of fact and conclusions of law were not based on evidence, but merely upon an Order of Default.  Respondent is incorrect.  Respondent admitted at the Inquiry Panel hearing that until recently, he did not know that it was impermissible to use a trust account as a personal account.  In addition, petitioner's Exhibit No. 1, received as evidence by the hearing judge, consisted of respondent's bank records, correspondence between Bar Counsel and respondent, respondent's law office records for the trust

Judge McGuckian's findings of fact or conclusions of law. Respondent appeared pro se and addressed the default found by Judge McGuckian. He explained to this Court that he did not satisfy petitioner's discovery requests because he had not received the motion from Bar Counsel with respect to discovery or Order of July 27th, 2001. He also advised this Court that his medical problems interfered with his participation in this case and that he was prepared to provide discovery and to defend the matter on the merits. In response thereto, this Court deferred a decision in this matter in order to give respondent an opportunity to comply with the discovery requests of Bar Counsel and to file his answers with the Clerk of the Court of Appeals on or before April 22, 2002. Respondent was advised, by Order of this Court, that in the event he filed the answers within the specified time, this Court would again refer the matter to the Circuit Court for Montgomery County for an evidentiary hearing as to the charges contained in the petition for disciplinary action. Respondent also was advised that if he failed to file the answers within the appropriate time, this Court will proceed to consider the case on the present state of the record and enter its disposition in the matter.

■ On April 23, 2002, one day late, respondent filed his responses to petitioner's discovery requests. In response thereto, Bar Counsel filed a motion requesting this Court to strike the untimely answers on the grounds that the answers were untimely, incomplete, not in compliance with the rules governing discovery, evasive, and in one instance, demonstrably false. We agree with Bar Counsel that respondent has failed to satisfy his obligation to provide the requested information.[7] Respondent was uncooperative with Bar Counsel

---

account, and the transcript of the June 22, 2000 inquiry panel hearing in this matter. Judge McGuckian found that "the averments of Bar counsel [were] amply documented in Exhibit 1."

7. In response to petitioner's request for production of documents, respondent refused to produce any documents. In his written re-

during the investigative stage of these proceedings, and continued to stonewall Bar Counsel's efforts to gain discovery throughout these proceedings.[8]   Accordingly, we shall consid-

sponse, he indicated that Bar Counsel had the documents already, and that as to other bank accounts, he was searching for the records and would supply them when he found them.   Bar Counsel maintains that it has never received any documents from respondent.   Interspersed throughout his answers, respondent asserted, without merit, that petitioner's requests were overbroad, not relevant, not within the scope of Bar Counsel's inquiry, not applicable, or that sometime in the future, the information would be provided.

Examples of respondent's answers to petitioner's request for admission of facts and genuineness of documents are as follows:

**Request no.   22:** Admit that respondent deposited personal funds into Crestar Account Number 209300191.

**Response:** Objection.   This question is overbroad.

**Request no.   40:** Admit that respondent failed to open an estate to probate the funds remaining in the account titled in the name of Ralph Piccola at the time of his death.

**Response:** Objection based on relevance.

Examples of respondent's answers to interrogatories are as follows:

**Request no.   13:** Identify by account number and title any and all bank accounts on which you had signatory authority at Crestar Bank during the period January 1, 1997 through February 28, 2001.

**Response:** . . . .   There is an additional account at Crestar which will be identified as soon as I locate the records.

**Request no.   16:** Identify the source of each deposit to the Crestar Bank account titled "Law Offices of Robert D. Powell, P.C.," number 209300191 during the period January 1997 through June 30, 1998.

**Response:** These records are being sought and this answer will be supplemented.

**Request no.   21:** If you did not admit that the Inquiry Panel transcript attached as Exhibit 19 to Petitioner's Request for Admission of Facts and Genuineness of Documents was accurate, state each inaccuracy and provide your reasons for believing the transcription is inaccurate.

**Response:** Objection.   Overly Broad.

Examples of respondents response the requests for production of documents are as follows:

**Request no 13:** Copies of all written communications with Crestar Bank relating to Accounts Number 86405–5684, 209300191 and 209163488, during the period January 1, 1997 through February 28, 2001.

**Response:** Whatever documents exists are within the confines of my office, and will be provided when found.

8. An attorney is required to cooperate with Bar Counsel during the investigative process.   Once a petition for disciplinary action is filed, an attorney is obligated to provide requested discovery in accordance with

er this case on the present state of the record and the findings of fact and conclusions of law of the hearing judge as set forth on October 24, 2001.

■ The hearing judge found by clear and convincing evidence that respondent had violated MRPC 1.15(a), 8.1(a) and (b), 8.4(c) and (d), and Rule 16–607 as alleged by Bar Counsel in the petition for disciplinary action. Based upon our independent review of the record, we agree with the findings and hold that Bar Counsel presented clear and convincing evidence of respondent's wrongdoings.

We turn now to the appropriate sanction. Bar Counsel recommends disbarment as the appropriate sanction.

■ In imposing discipline on an attorney for violation of the MRPC, the primary purpose is to protect the public and the public's confidence in the legal profession and not to punish the lawyer. *See, e.g., Attorney Grievance Comm'n. v. Snyder,* 368 Md. 242, 793 A.2d 515 (2002). Attorney disciplin-

---

the Maryland Rules of Procedure. We pointed out in *Attorney Grievance Comm'n v. Fezell,* 361 Md. 234, 255, 760 A.2d 1108, 1119 (2000) that "[t]he practice of law carries with it special responsibilities of self-regulation, and attorney cooperation with disciplinary authorities is of the utmost importance to the success of the process and the integrity of the profession." In this regard, we noted, quoting from the Washington Supreme Court in *In re Clark,* 99 Wash.2d 702, 663 P.2d 1339 (1983), as follows:

"The [disciplinary authority's] investigation of a complaint is an integral part of the machinery for handling charges regarding the ethics and conduct of the attorneys admitted to practice before this court. Public confidence in the legal profession, and the deterrence of misconduct, require prompt, complete investigations. The process of investigating complaints depends to a great extent upon an individual attorney's cooperation. Without that cooperation, the [disciplinary authority] is deprived of information necessary to determine whether the lawyer should continue to be certified to the public as fit. Obviously, unless attorneys cooperate in the process, the system fails and public confidence in the legal profession is undermined. If the members of our profession do not take the process of internal discipline seriously, we cannot expect the public to do so and the very basis of our professionalism erodes."
*Id.* at 1341–42.

ary proceedings also are aimed at deterring other attorneys from engaging in similar conduct.

It has long been the position of this Court that disbarment is the appropriate sanction for intentional dishonest conduct. *See Attorney Grievance Commission v. Vanderlinde,* 364 Md. 376, 773 A.2d 463 (2001). In cases warranting disbarment, such as those involving intentional dishonesty, fraud, misappropriation and the like, we will not accept as compelling extenuating circumstances "anything less than the most serious and utterly debilitating mental or physical health conditions, arising from any source that is the 'root cause' of the misconduct *and* that also result in an attorney's utter inability to conform his or her conduct in accordance with the law and with the MRPC." *Id.* at 413–14, 773 A.2d at 485.

Respondent engaged in intentional conduct involving dishonesty, fraud, deceit and misrepresentation. He failed to cooperate with Bar Counsel and when given the opportunity by this Court to comply with Bar Counsel's request, he again refused to provide the required information. The hearing judge found that respondent deposited earned fees and money he received from his father into a bank account titled as a trust account. Respondent used this account for personal and business purposes. Respondent used an account titled in the name of his father for personal and business purposes after the death of his father, thereby misrepresenting the ownership of the funds. He did not open an estate to probate these assets. Respondent engaged in this conduct in an effort to hide assets from his creditors. Respondent's trust account was overdrawn, and when asked by Bar Counsel to explain the cause, he delayed in providing the requested information and later provided false explanations.

In determining an appropriate sanction, an attorney's prior discipline history is an appropriate consideration. *See Attorney Grievance Comm'n v. Franz,* 355 Md. 752, 736 A.2d 339 (1999). After a disciplinary action, this Court expects a renewed commitment to professional standards and ethical conduct. Respondent was previously sanctioned in 1992 and

received an indefinite suspension with the right to reapply in not less than six months for conduct amounting to negligent misappropriation of client funds.

Respondent has presented no mitigating circumstances to justify a sanction less than disbarment. The appropriate sanction in this case is disbarment.

*IT IS SO ORDERED. RESPONDENT SHALL PAY ALL COSTS AS TAXED BY THE CLERK OF THIS COURT, INCLUDING COSTS OF ALL TRANSCRIPTS, PURSUANT TO MARYLAND RULE 16–715(C), FOR WHICH SUM JUDGMENT IS ENTERED IN FAVOR OF THE ATTORNEY GRIEVANCE COMMISSION OF MARYLAND AGAINST ROBERT D. POWELL.*