888 A.2d 1178

ATTORNEY GRIEVANCE COMMISSION OF MARYLAND

v.

Thomas W. KINNANE.

Misc. Docket AG No. 74, Sept. Term, 2004.

Court of Appeals of Maryland.

Dec. 23, 2005.

James P. Botluk, Asst. Bar Counsel (Melvin Hirshman, Bar Counsel for the Atty. Grievance Com'n of MD), for Petitioner.

No argument on behalf of Respondent.

Argued before BELL, C.J., RAKER, WILNER, CATHELL, HARRELL, BATTAGLIA and GREENE, JJ.

BELL, Chief Judge.

Bar Counsel, with the approval and direction of the Attorney Grievance Commission of Maryland, the petitioner, *see* Rule 16–751,[1] filed a *Petition For Disciplinary or Remedial*

---

1. Md. Rule 16–751(a) provides:

"(a) *Commencement of Disciplinary or Remedial Action.*

"(1) Upon Approval of Commission. Upon approval or direction of the Commission, Bar Counsel shall file a Petition for Disciplinary or Remedial Action in the Court of Appeals.

"(2)Conviction of Crime; Reciprocal Action. If authorized by Rule 16–771(b) or 16–773(b), Bar Counsel may file a Petition for Disciplinary or Remedial Action in the Court of Appeals without prior approval of the Commission. Bar Counsel promptly shall notify the Commission of the filing. The Commission on review may direct the withdrawal of a petition that was filed pursuant to this subsection."

Bar Counsel previously had filed a "Statement of Charges" against the respondent. Adopted November 30, 2000, effective July 1, 2001, Maryland Rule 16–741 governs the filing of "statements of charges." It provides:

"(a) *Filing of Statement of Charges.*

"(1) Upon completion of an investigation, Bar Counsel shall file with the Commission a Statement of Charges if Bar Counsel determines that:

"(A) the attorney either engaged in conduct constituting professional misconduct or is incapacitated;

"(B) the professional misconduct or the incapacity does not warrant an immediate Petition for Disciplinary or Remedial Action;

"(C) a Conditional Diversion Agreement is either not appropriate under the circumstances or the parties were unable to agree on one; and

*Action* against Thomas W. Kinnane, the respondent, charging him with violations of various of the Maryland Rules of Professional Conduct, as adopted by Maryland Rule 16–812. The Petition alleged, specifically, that the respondent violated Rules 1.5(e) (Fees),[2] and 8.4(b) and (c) (Misconduct).[3]

We referred the case, pursuant to Rules 16–752,[4] for hearing to the Honorable Ronald A. Silkworth, a judge of the Circuit Court for Anne Arundel County. Following the hearing, at which the respondent appeared and participated, the hearing court made findings of fact, *see* Rule 16–757(c)[5], as follows:

> "(D) a reprimand is either not appropriate under the circumstances or (i) one was offered and rejected by the attorney, or (ii) a proposed reprimand was disapproved by the Commission and Bar Counsel was directed to file a Statement of Charges."

The filing of the "statement of charges" triggered the peer review process, *see* Rules 16–741(b), 16–742, and 16–743, which was competed prior to the filing of the *Petition for Disciplinary or Remedial Action*.

2. Rule 1.5(e) provides:

> "(e) A division of a fee between lawyers who are not in the same firm may be made only if:
> "(1) the division is in proportion to the services performed by each lawyer or each lawyer assumes joint responsibility for the representation;
> "(2) the client agrees to the joint representation and the agreement is confirmed in writing; and
> "(3) the total fee is reasonable."

3. Rule 8.4(b) and (c) provides that "[i]t is professional misconduct for a lawyer to: ... commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects [and] engage in conduct involving dishonesty, fraud, deceit or misrepresentation"

4. Rule 16–752 provides, as relevant:

> "(a) *Order*. Upon the filing of a Petition for Disciplinary or Remedial Action, the Court of Appeals may enter an order designating a judge of any circuit court to hear the action and the clerk responsible for maintaining the record. The order of designation shall require the judge, after consultation with Bar Counsel and the attorney, to enter a scheduling order defining the extent of discovery and setting dates for the completion of discovery, filing of motions, and hearing."

5. Rule 16–757(c) provides:

"Petitioner's Exhibit 1 is a Stipulation of Facts prepared by the parties. The Court finds that the facts contained therein have been proven by clear and convincing evidence. The Stipulation states:

"The Respondent, Thomas W. Kinnane, Esquire ('Respondent') was admitted to the Bar of the Court of Appeals of Maryland on June 5, 1996. He is also admitted to the Virginia Bar and District of Columbia Bar.

"Prior to becoming an attorney, Respondent was a uniformed officer in the United States Secret Service for two years then a police officer in the Anne Arundel County Police Department for eight years.

"While attending law school, Respondent began working for the law firm of Alexander & Cleaver in Fort Washington, Maryland. Once he was admitted to the Maryland Bar, he became an associate of that firm, where he remained until February 2000. He then practiced with another lawyer in the firm, Howes & Kinnane, P.C. and later became a solo practitioner, with his office in Anne Arundel County. Throughout the course of his law practice, Respondent has concentrated a significant portion of his practice representing energy companies in connection with matters pending before government regulatory agencies.

"In or about 1998, while employed by Alexander & Cleaver, Respondent met Andrew N. Chau, Esquire ('Mr. Chau'), the manager of regulatory affairs for Shell Energy Services ('Shell Energy'). Mr. Chau also held himself out to the Respondent and others as an attorney. Respondent performed legal services for Shell Energy and other similar clients while at

---

"(c) *Findings and conclusions.* The judge shall prepare and file or dictate into the record a statement of the judge's findings of fact, including findings as to any evidence regarding remedial action, and conclusions of law. If dictated into the record, the statement shall be promptly transcribed. Unless the time is extended by the Court of Appeals, the written or transcribed statement shall be filed with the clerk responsible for the record no later than 45 days after the conclusion of the hearing. The clerk shall mail a copy of the statement to each party."

Alexander & Cleaver. He continued to represent Shell Energy after leaving the firm. Respondent's primary point of contact at Shell Energy continued to be Mr. Chau. Respondent later performed work for Tractebel Power where Mr. Chau accepted employment after leaving Shell Energy. During the course of his representation of Shell Energy, Respondent submitted approximately 15 invoices for legal services. It was Respondent's practice to invoice Shell Energy for work after it was performed, rather than to receive a retainer for future work.

"In or about July 2001, Respondent and Mr. Chau met in Washington, D.C., at Mr. Chau's request. Mr. Chau informed Respondent that he had been authorized by Judith Burow, vice president of Shell Energy, to pay Respondent a $70,000.00 retainer for future work. He instructed Respondent to prepare an invoice for that amount. Respondent prepared an invoice from Howes & Kinnane, P.C. to Shell Energy dated July 26, 2001. The description of services read, 'Nevada regulatory and government relations activities, 2001 session and implementation.' On August 8, 2001, Shell Energy paid $70,000.00 to Respondent by electronic transfer. Respondent held the $70,000.00 in the firm's escrow account. Respondent had never received a retainer from Shell Energy before this payment.

"On or about August 22, 2001, Mr. Chau called the Respondent. He directed the Respondent to take the entire retainer as a bonus for work he had done before at a discounted rate, but to issue a check for $35,000.00 to Mr. Chau. Mr. Chau asked for the $35,000.00 payment to compensate him for referring future business from Shell Energy and its affiliated companies as well as Tractebel Power.

"Respondent transferred $70,000.00 to the firm's operating account. Respondent issued a $35,000.00 check to Andrew Chau & Associates, P.C. on August 22, 2001. The statement accompanying the check indicated that it was for 'professional fees: consulting'. In fact, Mr. Chau provided no consulting services to Respondent or his firm. Respondent drew a check to himself for $35,000.00 from the firm's operating account.

"Howes & Kinnane, P.C. issued an invoice to Shell Energy on August 8, 2001. That invoice identified the $35,000.00 payment to Andrew Chau as a 'consulting fee'. Respondent also issued a form 1099 to Mr. Chau, reporting the payment of the purported consulting fee. Respondent claimed the $35,000.00 on his annual state and federal tax returns.

"In the fall of 2001, Respondent received a telephone call from Judith Burow and a Mr. Estes of Shell Energy. They informed the Respondent that the $70,000.00 payment had not been authorized by Shell Energy. Mr. Chau called Respondent shortly afterward and indicated that the invoice 'might not have been approved'. Respondent believed this to be an internal dispute among Chau and his supervisors at Shell Energy.

"Mr. Chau was subsequently discharged by Shell Energy. Criminal charges were brought against both Mr. Chau and the Respondent. Respondent was charged with felony theft on April 30, 2003. Harris County (Texas) District Court entered a deferred adjudication of guilt on July 11, 2003. Respondent has paid restitution of $35,000.00, as well as a $2,000.00 fine. Respondent also provided all information he had to assist in the prosecution of Mr. Chau. Respondent has also cooperated fully with Bar Counsel's investigation of this matter."

From the foregoing facts, which it found by clear and convincing evidence, *Attorney Griev. Comm'n v. Culver,* 381 Md. 241, 266, 849 A.2d 423, 438 (2004), Rule 16–757(b),[6] the hearing court concluded that the respondent violated Rules 1.5(e)[7] and 8.4(b) and (c), as charged. The Rule 1.5(e) viola-

---

6. Maryland Rule 16–757(b) provides:

"The petitioner has the burden of proving the averments of the petition by clear and convincing evidence. A respondent who asserts an affirmative defense or a matter of mitigation or extenuation has the burden of proving the defense or matter by a preponderance of the evidence."

7. Although the respondent had not been charged with violating Rule 1.8(e), which proscribes a lawyer's providing financial assistance to a

tion was established, it stated, by the evidence that the respondent split his fee from Shell Energy with Mr. Chau, Shell's in-house counsel. Further explaining, the hearing court pointed out:

"Mr. Chau performed no services to earn that portion of the fee. Respondent has acknowledged that the payment was made at Mr. Chau's direction to pay him to make future referrals of work to Respondent's firm. While Respondent characterizes the payment as the equivalent of purchasing advertising with his own funds received from clients' payments, that position is contradicted by Respondent's billing statement submitted to Shell Energy, which disclosed that $35,000.00 was paid to Chau for consulting services. The client never authorized Respondent to share the fee with Mr. Chau. In fact, the payment was an incentive for Mr. Chau to refer work to Respondent also from Tractabel Power, a company unrelated to Shell Energy. Mr. Chau was not a member of Respondent's firm. The division of fees was not in proportion to the work performed since Mr. Chau was being compensated for making future referrals of work. There was no written agreement between Respondent and Shell Energy for Respondent and Mr. Chau to assume joint responsibility for the work. The fee charged by Respondent was not reasonable because no services were performed for the fee. Rather, it was a 'bonus' not authorized by the client, but only offered by the corrupt employee who was seeking the improper kickback of half of the fee. Respondent's conduct violated Rule 1.8(e) of the Maryland Rules of Professional Conduct."

As we have seen, the respondent was charged with, and found guilty of, felony theft, in respect of which he made restitution and paid a fine. That criminal conduct, the hearing court concluded, "reflects adversely on [the respondent's] honesty, trustworthiness and fitness as a lawyer." It also in-

---

client, only Rule 1.5(e), the hearing court's conclusion of law referred to Rule 1.8(e), throughout. That must be, and we so construe it as, a typographical error.

volved, the court noted and determined, dishonesty and misrepresentation, proscribed by Rule 8.4(c). It elucidated:

"Respondent's invoice for $70,000.00 retainer made no reference to the fact that it was to be a retainer for future services. Nothing on the bill would alert the client to the fact that the payment requested was not for services already performed. In fact, the charging of a retainer was inconsistent with Respondent's previous dealings with the client, who had only paid fees after services were rendered. Respondent then accepted that 'retainer' as a bonus for work long since performed and paid for, solely on the authorization of the client's employee who was demanding that he split the 'bonus' with him personally. Particularly in light of the fact the client had never paid a bonus to him before, the large amount of the payment, the fact the payment was submitted for other purposes and the client had consistently insisted on paying extremely low fees to the Respondent, Respondent could not reasonably have believed that Mr. Chau had authorization from Shell Energy to pay a bonus to Respondent, to be shared with Mr. Chau. Respondent's acceptance of the $70,000.00 and his sharing of the unearned funds with Mr. Chau led to Respondent['s] entering a plea of guilty to felony theft and receiving a deferred adjudication by the Texas court. Respondent's invoicing of the $70,000.00 fee and his taking it as a fee at the direction of Mr. Chau to Shell Energy were dishonest acts and crimes adversely reflecting on Respondent's character and fitness as an attorney. His invoices, which did not reflect that the $70,000.00 was unearned and which described the $35,000.00 paid to Mr. Chau as a professional fee for consulting services, were dishonest misrepresentations. Respondent and Mr. Chau participated in a fraudulent scheme which constituted felony theft in Texas."

Unlike the Petitioner, which took no exceptions to the hearing court's findings or conclusions, the respondent filed *Respondent's Exceptions To The Findings Of Fact and Conclusions Of Law.* In that pleading, he excepted to the hearing court's conclusion that he could not have believed reasonably

that Mr. Chau had been authorized by Shell Energy to pay him a bonus, "to be shared with Mr. Chau." There is not, he asserts, any evidence in the record to support the conclusion, while, on the other hand, there is evidence to the contrary, his testimony, "that [he] had no knowledge upon payment of the bonus that Chau later required [be] split." He also maintains that his actions, all of them—"providing invoices and statements through normal channels; providing a 1099 Form to Chau; depositing and processing the funds appropriately in firm accounts; and reporting the income on respondent's annual state and federal taxes,"—"indicate that he had a good faith belief that the bonus was properly paid."

In further support of this exception, the respondent relies on the very fact that he took an "Alford plea," [8] proffering that entering such a plea "reflects respondent's good faith belief that his conduct was appropriate and ... [his] evaluation of the risks and benefits of proceeding to trial on the facts of the case, at a particular time, and in a particular distant city." The respondent further finds it "noteworthy" that, notwithstanding the length of the process and the hearing court's conclusion in this regard and "the effects thereof on respondent's honesty, trustworthiness and fitness as an attorney," Bar Counsel took no preliminary action to terminate his practice, thereby "evidencing its apparent belief that respondent's actions do not, and have not, affected his ability to honestly and competently continue to represent members of the public."

The respondent's second exception relates to the hearing court's refusal to admit into evidence the Peer Review Panel's Report.[9] Characterizing that ruling as erroneous, he notes

---

**8.** *See North Carolina v. Alford,* 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970).

**9.** The hearing court ruled both that the Peer Review recommendations are irrelevant for any material purpose and that admission of the Panel Report would violate Maryland Rule 16–723(a), which provides:

"(a) *Confidentiality of Peer Review Meetings.* All persons present at a peer review meeting shall maintain the confidentiality of all speech,

that the report was offered to clarify the record "with respect to how the formal Bar Counsel petition ultimately was arrived at and filed with the Circuit Court" and that the filing of them was not recommended to Bar Counsel.

Maryland Rule 16–759(b) governs review by this Court and, in particular, the disposition of exceptions to the hearing court's findings of fact and conclusions of law. It provides:

"(1) *Conclusions of law.* The Court of Appeals shall review de novo the circuit court judge's conclusions of law.

"(2) *Findings of fact.* (A) If no exceptions are filed. If no exceptions are filed, the Court may treat the findings of fact as established for the purpose of determining appropriate sanctions, if any.

"(B) If exceptions are filed. If exceptions are filed, the Court of Appeals shall determine whether the findings of fact have been proven by the requisite standard of proof set out in Rule 16–757(b). The Court may confine its review to the findings of fact challenged by the exceptions. The Court shall give due regard to the opportunity of the hearing judge to assess the credibility of witnesses."

The respondent's first exception implicates Rule 16–759(b)(1), because it involves a conclusion of law drawn by the hearing court. Those conclusions are reviewed de novo. We do not agree, at the outset, that there are no facts to support the hearing court's conclusion of law. Indeed, the hearing court enumerated the facts on which it relied: the course of dealings between the client and the respondent, the failure of the bill for the "retainer" to so characterize it or, at least, "alert the client to the fact that the payment requested was not for services already performed," the large amount of the

writing, and conduct made as part of the meeting and may not disclose or be compelled to disclose the speech, writing, or conduct in any judicial, administrative, or other proceeding. Speech, writing, or conduct that is confidential under this Rule is privileged and not subject to discovery, but information otherwise admissible or subject to discovery does not become inadmissible or protected from disclosure solely by reason of its use at the peer review meeting."

requested payment, and, as indicated, the respondent took no exception to any of these findings of facts. *See* Rule 16–759(b)(2)(B). Having reviewed the hearing court's detailed and cogent explanation and the facts on the basis of which its challenged legal conclusion was drawn, we have no hesitancy in overruling the exception.

▬▬▬ We shall also overrule the respondent's exception to the hearing court's refusal to admit the Peer Review Panel's Report. Rule 16–743, the rule governing the Peer Review process, makes clear the limited office that Panel performs. It provides, as relevant:

> "(a) *Purpose of Peer Review Process.* The purpose of the peer review process is for the Peer Review Panel to consider the Statement of Charges and all relevant information offered by Bar Counsel and the attorney concerning it and to determine (1) whether the Statement of Charges has a substantial basis and there is reason to believe that the attorney has committed professional misconduct or is incapacitated, and, (2) if so, whether a Petition for Disciplinary or Remedial Action should be filed or some other disposition is appropriate. The peer review process is not intended to be an adversarial one and it is not the function of Peer Review Panels to hold evidentiary hearings, adjudicate facts, or write full opinions or reports."

To be sure, although Rule 16–743(e)[10] permits the Peer Review Panel to make recommendations to the petitioner to the same extent as could Bar Counsel, nevertheless, it is the petitioner, as Rule 16–751(a) makes clear, that determines whether, and what, charges are to be filed; the Rule provides for the filing of charges upon approval or at the direction of the petitioner. Thus, whether Bar Counsel recommends the

---

**10.** Rule 16–743(e) provides:

"(e) *Recommendation.* The Peer Review Panel may recommend to the Commission that a Petition for Disciplinary or Remedial Action be filed or make any recommendation to the Commission that Bar Counsel may make under Rule 16–734(a), (b), or (c). The Panel shall accompany its recommendation with a brief explanatory statement."

filing of charges or another procedure is not only not dispositive, we agree with the hearing court, it is irrelevant.

■ Moreover, pursuant to Maryland Rule 16–723, certain matters pertaining to the Peer Review process are confidential. Section (b)(2) of that Rule lists "the records and proceedings of a Peer Review Panel" as among such matters. The Report of the Peer Review Panel qualifies as "records and proceedings [that] are confidential and not open to public inspection [whose] contents may not be revealed by the Commission, the staff of the Commission, Bar Counsel, the staff and investigators of the Office of Bar Counsel, members of the Peer Review Committee, or any attorney involved in the proceeding."

In *Attorney Griev. Comm'n v. Lee*, 387 Md. 89, 108, 874 A.2d 897, 908 (2005), we addressed an issue akin to, though certainly not identical to, the issue presented in this case. There, the Respondent claimed that he had been denied the opportunity to impeach the complainant in his case when the hearing court refused to allow him to cross-examine her by introducing statements she made at the Peer Review Panel proceeding that he alleged were inconsistent with certain statements she made at the evidentiary hearing before the hearing judge. *Id.* at 102, 874 A.2d at 904. We rejected his argument, *id.* at 113–14, 874 A.2d at 911–12, in the process delineating the nature and function of the Peer Review process:

"The Peer Review process features a panel of at least three individuals comprised of a majority of attorneys and at least one member being a non-attorney that makes a preliminary determination as to whether formal charges should be filed against the respondent attorney.... [T]he Peer Review Panel proceeding is an informal, nonadversarial meeting designed to allow Bar Counsel, the respondent attorney, the complainant, and other invited persons to meet and discuss the issues presented in the complaint in an environment similar to a mediation process.... The Panel is not governed by any formal rules of evidence, but must respect lawful privileges....

"The purpose of the Peer Review Panel is not principally to make recommendations as to the appropriateness of formal charges.... If a Peer Review Panel concludes that the complaint has a substantial basis indicating the need for some remedy, some behavioral or operational changes on the part of the lawyer, or some discipline short of suspension or disbarment, part of the peer review process can be an attempt through both evaluative and facilitative dialogue, (A) to effectuate directly or suggest a mechanism for effecting an amicable resolution of the existing dispute between the lawyer and the complainant, and (B) to encourage the lawyer to recognize any deficiencies on his or her part that led to the problem and take appropriate remedial steps to address those deficiencies. The goal, in this setting, is not to punish or stigmatize the lawyer or to create a fear that any admission of deficiency will result in substantial harm, but rather to create an ambience for a constructive solution. The objective views of two fellow lawyers and a lay person, expressed in the form of advice and opinion rather than in the form of adjudication, may assist the lawyer (and the complainant) to retreat from confrontational positions and look at the problem more realistically.

"If, however, after hearing statements, the Panel determines that the Statement of Charges 'has a substantial basis and that there is reason to believe that the [respondent] attorney has committed professional misconduct or is incapacitated, the Panel may ... make an appropriate recommendation to the Commission or ... inform the parties of its determination and allow the attorney an opportunity to consider a reprimand or a Conditional Diversion Agreement.' The Panel is authorized to recommend to the Commission that either a Petition for Disciplinary or Remedial Action be filed, the Statement of Charges be dismissed, or that a Conditional Diversion Agreement or reprimand is appropriate. Although the purpose of the Panel proceeding is not to generate any formal findings of fact, the Panel must accompany its recommendation with 'a brief explanatory statement.' "

*Id.* at 108–09, 874 A.2d at 908–09 (internal citations omitted). We concluded, noting the "comprehensive and sweeping language of Md. Rule 16–723(a)":

> "Despite the common sense appeal of permitting use of statements made during the Peer Review process to expose later inconsistencies or intentional misrepresentations, we conclude that the better course is to declaim, borrowing and mutating somewhat a currently popular advertising slogan, 'what happens in Peer Review stays in Peer Review.'"

*Id.* at 113, 874 A.2d at 911.

Where there is no more than a recommendatory function, one that is not binding and certainly not dispositive, there is even more reason to "insulate" Peer Review Panel Reports from subsequent disclosure at later stages of the attorney discipline process.

■ While not excepting to the findings or the conclusions, the petitioner filed *Petitioner's Recommendation For Sanction*. It seeks the respondent's disbarment. Stressing the hearing judge's characterization of the respondent's conduct as "dishonest" and "crimes adversely reflecting on respondent's character and fitness as an attorney," concluding that he "participated in a fraudulent scheme which constituted felony theft in Texas," the petitioner relies on *Attorney Griev. Comm'n v. Vanderlinde*, 364 Md. 376, 418, 773 A.2d 463, 488 (2001) and its progeny.

The respondent has not specifically recommended a sanction. It is obvious from his exceptions and the prayers thereto—requesting the Court to "take such actions it deems appropriate with respect to Bar Counsel's petition and the Circuit Court's findings and Conclusions that will allow the respondent to continue his honorable service to the public and exemplary representation of the Bar"—that he opposes, and is urging something short, perhaps quite a bit short, of disbarment.

■ ᵗ The purpose of attorney disciplinary proceedings is well settled: to protect the public and not to punish the erring attorney. *See Attorney Griev. Comm'n v. Davis,* 375 Md. 131, 167, 825 A.2d 430, 451 (2003); *Bar Ass'n of Baltimore City v. Marshall,* 269 Md. 510, 519, 307 A.2d 677, 682 (1973) ("the purpose of disciplinary actions . . . is not to punish the offending attorney, as that function is performed in other types of legal proceedings, but it is to protect the public from one who has demonstrated his unworthiness to continue the practice of law)" In *Davis,* we elucidated:

> "Our consideration of the appropriate disciplinary measure to be taken in any given case involving violation of the Rules of Professional Conduct is guided by our interest in protecting the public and the public's confidence in the legal profession. *Attorney Grievance Comm'n v. Powell,* 369 Md. 462, 474, 800 A.2d 782, 789 (2002). The purpose of such proceedings is not to punish the lawyer, but should deter other lawyers from engaging in similar conduct. *[Attorney Grievance Comm'n v.] Mooney,* 359 Md. [56,] 96, 753 A.2d [17,] 38 [2000]. The public is protected when we impose sanctions that are commensurate with the nature and gravity of the violations and the intent with which they were committed. *Attorney Grievance Comm'n v. Awuah,* 346 Md. 420, 435, 697 A.2d 446, 454 (1997)."

375 Md. at 166–67, 825 A.2d at 451.

■ In *Vanderlinde,* we stated a general rule applicable to intentionally dishonest conduct in the absence of compelling extenuating circumstances, that disbarment is the usual sanction for such misconduct. 364 Md. at 413–415, 773 A.2d at 485. We explained:

> "Unlike matters relating to competency, diligence and the like, intentional dishonest conduct is closely entwined with the most important matters of basic character to such a degree as to make intentional dishonest conduct by a lawyer almost beyond excuse. Honesty and dishonesty are, or are not, present in an attorney's character. Disbarment ordi-

narily should be the sanction for intentional dishonest conduct."

*Id.* at 418, 773 A.2d at 488.

In that case, the dishonest conduct was the respondent's theft, over a period of time, of $3,880.67 from her employer, a community association, for whom she worked in a non-legal capacity. *Vanderlinde,* 364 Md. at 381, 773 A.2d at 465. In disbarring the respondent, even though she had repaid the stolen funds, we noted the absence of mitigation, *id.* at 419, 773 A.2d at 488, and concluded that no extenuating circumstances had been established by the respondent's medical evidence. *Id.* What we said in a similar case, in which the respondent submitted false documentation in connection with an insurance claim, just as easily could be applied to the respondent in this case: "Respondent's dishonesty was willful, intentional and for her own personal gain. . . . 'Respondent's dishonest and criminal conduct was motivated by greed.'" *Attorney Griev. Comm'n v. Jordan,* 386 Md. 583, 600, 873 A.2d 1161, 1171 (2005).

The respondent's conduct in this case is not mitigated; there are no compelling extenuating circumstances. Accordingly, we adopt the petitioner's recommendation and order the respondent disbarred.

IT IS SO ORDERED; RESPONDENT SHALL PAY ALL COSTS AS TAXED BY THE CLERK OF THIS COURT, INCLUDING THE COSTS OF ALL TRANSCRIPTS, PURSUANT TO MARYLAND RULE 16–761, FOR WHICH SUM JUDGMENT IS ENTERED IN FAVOR OF THE ATTORNEY GRIEVANCE COMMISSION OF MARYLAND AGAINST THOMAS W. KINNANE.