*Attorney Grievance Commission of Maryland v. Joseph Lee Friedman*, Misc. Docket AG No. 49, September Term 2012

**ATTORNEY MISCONDUCT — DISCIPLINE — DISBARMENT —** Respondent, Joseph Lee Friedman, violated Maryland Lawyers' Rules of Professional Conduct 1.15(b) and 8.4(c) and (d), as well as Maryland Rule 16-607. The violations stemmed from Respondent's depositing personal funds into his attorney escrow account in order to conceal those funds from creditors. The appropriate sanction for Respondent's violations is disbarment.

Circuit Court for Baltimore County
Case No. 03-C-12-010757
Argued:  February 11, 2014

IN THE COURT OF APPEALS
OF MARYLAND

Misc. Docket AG No. 49

September Term, 2012

ATTORNEY GRIEVANCE
COMMISSION OF MARYLAND

v.

JOSEPH LEE FRIEDMAN

Barbera, C.J.,
Harrell
Battaglia
Greene
Adkins
McDonald
Watts,
JJ.

Opinion by Barbera, C.J.

Filed: March 24, 2014

On October 17, 2012, Petitioner, the Attorney Grievance Commission of Maryland ("Commission"), acting through Bar Counsel, filed with this Court a Petition for Disciplinary or Remedial Action ("Petition") against Respondent, Joseph Lee Friedman. The Petition alleged violations of the Maryland Lawyers' Rules of Professional Conduct ("MLRPC") and the Maryland Rules in connection with Respondent's depositing personal funds into an attorney escrow account in order to shield those funds from garnishment by the United States Internal Revenue Service ("IRS"). Specifically, the Petition alleged that Respondent had engaged in professional misconduct by violating MLRPC 1.15(b) (safekeeping property)[1]; MLRPC 8.4 (c) and (d) (misconduct)[2]; and Maryland Rule 16-607 (commingling of funds).[3]

---

[1] MLRPC 1.15(b) provides: "A lawyer may deposit the lawyer's own funds in a client trust account only as permitted by [Maryland Rule 16-607(b)]."

[2] MLRPC 8.4 provides, in relevant part:
> It is professional misconduct for a lawyer to:
> ***
> (c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation;
> (d) engage in conduct that is prejudicial to the administration of justice;. . . .

[3] Maryland Rule 16-607 provides:

> a. **General Prohibition.** An attorney or law firm may deposit in an attorney trust account only those funds required to be deposited in that account by [Maryland] Rule 16-604 or permitted to be so deposited by section b. of this Rule.

> b. **Exceptions.** 1. An attorney or law firm shall either (A) deposit into an attorney trust account funds to pay any fees, service charges, or minimum balance required by the financial institution to open or maintain the account, including those fees that cannot be charged against interest due to the Maryland Legal Services Corporation Fund pursuant to [Maryland] Rule 16-

(continued...)

On October 18, 2012, this Court designated the Honorable Patrick Cavanaugh of the Circuit Court for Baltimore County ("the hearing judge") to conduct an evidentiary hearing and file written findings of fact and conclusions of law. *See* Md. Rules 16-752(a) and 16-757(c). Respondent was served with process, in compliance with Maryland Rule 16-753, but did not file a response to the Petition, timely or otherwise. Accordingly, on April 30, 2013, the hearing judge entered a default order against Respondent and the matter was set for a hearing on May 29, 2013. Respondent, though notified of the default order and hearing date, neither moved to vacate the order nor appeared at the hearing.

During the May 29 hearing, the hearing judge received evidence from the Commission, acting through Bar Counsel. Shortly thereafter, the hearing judge issued

---

[3](...continued)
610 b 1 (D), or (B) enter into an agreement with the financial institution to have any fees or charges deducted from an operating account maintained by the attorney or law firm. The attorney or law firm may deposit into an attorney trust account any funds expected to be advanced on behalf of a client and expected to be reimbursed to the attorney by the client.

    2. An attorney or law firm may deposit into an attorney trust account funds belonging in part to a client and in part presently or potentially to the attorney or law firm. The portion belonging to the attorney or law firm shall be withdrawn promptly when the attorney or law firm becomes entitled to the funds, but any portion disputed by the client shall remain in the account until the dispute is resolved.

    3. Funds of a client or beneficial owner may be pooled and commingled in an attorney trust account with the funds held for other clients or beneficial owners.

written findings of fact and conclusions of law, in which he concluded that Respondent had violated MLRPC 1.15(b), MLRPC 8.4(c) and (d), and Maryland Rule 16-607.

On February 11, 2014, we held oral argument, at which only the Commission, acting through Bar Counsel, appeared. The next day, we entered a per curiam order disbarring Respondent. We shall explain in this opinion the reasons for Respondent's disbarment.

I.

Based upon the evidence he accepted at the May 29, 2013, hearing, the hearing judge set forth the following findings of fact:

Respondent has been a member of the Bar of this Court since 1973. He served as general counsel for his father's company, Crown Service, Inc. ("Crown Service"), and also maintained a separate practice.[4]

When Respondent's father passed away in 2004, he and his brother assumed ownership of Crown Service. From 2004 until 2010, the two brothers were in charge of the company's day-to-day operations.

In 2010, Respondent and his brother entered into an agreement by which Respondent assigned to his brother his ownership interest in Crown Service and, in return, his brother promised to pay the company's outstanding tax liability, which, at the time, included over $70,000 in federal taxes. Respondent understood that, notwithstanding the agreement, he

---

[4] According to the "final report" issued by the Commission investigator assigned to Respondent's case, Respondent practiced at several law firms from 1974 to 1985 and maintained his own practice after that time.

remained personally liable for the company's tax liability, and the IRS could therefore garnish his personal funds in order to satisfy that liability.

At some point in 2010, Respondent resumed the private practice of law. Around that time, he opened an attorney escrow account at PNC Bank ("PNC"). Respondent did not hold client funds in his escrow account. Rather, he deposited personal funds into the account in order to shield those funds from garnishment by the IRS. It was Respondent's practice to withdraw funds from a personal checking account, deposit those funds into the attorney escrow account, and withdraw funds from the escrow account when he needed to pay bills.

Respondent's practice of concealing personal funds in his attorney escrow account eventually came to light in January 2011, shortly after PNC notified the Commission that Respondent's escrow account had been overdrawn. In response to the notification from PNC, Bar Counsel wrote to Respondent requesting an explanation for the overdraft and demanding records related to the escrow account. In his response to Bar Counsel, Respondent claimed that the overdraft was the result of "a mathematical error on [his] part." He then described the nature of his agreement with his brother regarding Crown Service's tax liability, acknowledged that the agreement had left him "personally vulnerable to [the] IRS," and conceded that he had "place[d] personal funds in [his] Attorney Escrow Account in case [his] personal accounts were levied upon" by the IRS.[5]

_____

[5] The hearing judge did not make factual findings specifically addressing Bar Counsel's letter to Respondent concerning the overdraft and Respondent's written response

(continued...)

Based upon those factual findings, the hearing judge concluded, by a clear and convincing evidence standard of proof, that Respondent violated MLRPC 1.15(b), MLRPC 8.4 (c) and (d), and Maryland Rule 16-607. The hearing judge explained his legal conclusions, as follows:

> By depositing his own funds in his attorney escrow account, Respondent violated Rule 1.15(b) of the Maryland Rules of Professional Conduct and Maryland Rule 16-607. Those Rules only permit a lawyer to deposit personal funds in an escrow account to pay bank-imposed charges or maintain a required minimum balance or to hold funds to which the lawyer and client may both have a claim. . . . Respondent's purpose in depositing his own funds in his escrow account was to conceal the funds from the Internal Revenue Service to avoid garnishment.
>
> Because Respondent's purpose for holding the funds in escrow was to conceal the funds from his creditor, Respondent's actions were dishonest and constituted conduct prejudicial to the administration of justice in violation of Rules 8.4(c) and (d) of the Maryland Rules of Professional Conduct. *See Attorney Grievance Comm'n v. Foltz*, 411 Md. 359, 983 A.2d 434 (2009); *Attorney Grievance Comm'n v. Powell*, 369 Md. 462, 800 A.2d 782 (2002); *Attorney Grievance Comm'n v. Snyder*, 368 Md. 242, 793 A.2d 515 (2002); *Attorney Grievance Comm'n v. Webster,* 348 Md. 662, 705 A.2d 1135 (1998); *Attorney Grievance Comm'n v. Velazquez*, 301 Md. 450, 483 A.2d 354 (1984).
>
> In summary, the Court finds that Respondent violated Rules 1.15(b) and 8.4(c) and (d) of the Maryland Rules of Professional Conduct and Maryland Rule 16-607 by depositing personal funds in his escrow account to conceal those funds from the Internal Revenue Service, knowing that he had a substantial tax liability which could result in the garnishment of his personal accounts.

---

[5](...continued)
to that letter. The hearing judge, however, did accept copies of both documents at the May 29, 2013, hearing, and his findings of fact are consistent with the contents of those documents.

II.

"In attorney discipline proceedings, this Court has original and complete jurisdiction and conducts an independent review of the record." *Attorney Grievance Comm'n v. Page*, 430 Md. 602, 626 (2013) (citation omitted). "[W]e accept the hearing judge's findings of fact as prima facie correct unless shown to be clearly erroneous." *Attorney Grievance Comm'n v. Lara*, 418 Md. 355, 364 (2011) (citation omitted). If no exceptions are filed, we may treat the findings of fact as established for the purpose of determining the appropriate sanction. Md. Rule 16-759(b)(2)(A). We review *de novo* the hearing judge's conclusions of law. Md. Rule 16-759(b)(1). This is true even if, as in this case, a default order was entered against the respondent by the hearing judge. *See Attorney Grievance Comm'n v. Tinsky*, 377 Md. 646, 653 (2003).

Neither Respondent nor Bar Counsel filed exceptions to the hearing judge's findings of fact. We therefore treat those findings as established for the purpose of determining the appropriate sanction. *See* Md. Rule 16-759(b)(2)(A). Likewise, neither party filed exceptions to the hearing judge's conclusions of law. Based upon our *de novo* review of the record in this case, we agree with the hearing judge, for the reasons stated in his written conclusions of law, that Respondent violated MLRPC 1.15(b), MLRPC 8.4 (c) and (d), and Maryland Rule 16-607. Consequently, our only remaining task is to determine the appropriate sanction for Respondent's misconduct.

Respondent did not appear at oral argument before this Court, nor did he submit a

recommendation for sanction.  Bar Counsel, for his part, recommends disbarment.  Bar Counsel contends that, absent "sufficient mitigating circumstances," which the hearing judge did not find were present in this case, the appropriate sanction for dishonest and fraudulent conduct, such as knowingly concealing personal assets in an attorney escrow account, is disbarment.

In determining the appropriate sanction for an attorney's misconduct, we evaluate the particular facts and circumstances of each case.  *See Attorney Grievance Comm'n v. Coppola*, 419 Md. 370, 404 (2011).  "The severity of the sanction depends on . . . the intent with which the acts [of misconduct] were committed, the gravity, nature and effect of the violations, and any mitigating factors." *Attorney Grievance Comm'n v. Ward,* 394 Md. 1, 33 (2006) (citations omitted).  As we consider the appropriate sanction, we bear in mind that the purpose of a sanction is not to punish the attorney, *Attorney Grievance Comm'n v. Garcia*, 410 Md. 507, 521 (2009), but rather, "to protect the public and the public's confidence in the legal profession." *Attorney Grievance Comm'n v. Zimmerman*, 428 Md. 119, 144 (2012).  "Sanctions accomplish these goals by deterring intolerable conduct and keeping those unfit to practice law from doing so." *Id.*

The gravamen of Respondent's misconduct is his dishonest and fraudulent practice of depositing personal funds into an attorney escrow account in order to shield those funds from creditors—namely the IRS.  We have said before, and it bears repeating here, that "[c]andor and truthfulness are two of the most important moral character traits of a lawyer."

*Attorney Grievance Comm'n v. Myers*, 333 Md. 440, 449 (1994). "Unlike matters relating to competency, diligence and the like, intentional dishonest conduct is closely entwined with the most important matters of basic character to such a degree as to make intentional dishonest conduct by a lawyer almost beyond excuse." *Garcia*, 410 Md. at 521-22 (quoting *Attorney Grievance v. Vanderlinde*, 364 Md. 376, 418 (2001)). Thus, "[w]hen an attorney's conduct involves intentional dishonesty, fraud, deceit or misrepresentation, we do not discuss 'degrees' of dishonesty, but generally order disbarment, absent compelling extenuating circumstances." *Id*. at 521 (citation omitted). To the extent an attorney alleges that such circumstances exist, the bar for avoiding disbarment remains high:

> [W]e will not accept as compelling extenuating circumstances anything less than the most serious and utterly debilitating mental or physical health conditions, arising from any source that is the root cause of the misconduct *and* that also result in an attorney's utter inability to conform his or her conduct in accordance with the law and with the [MLRPC].

*Attorney Grievance Comm'n v. Powell*, 369 Md. 462, 475 (2002) (quotation omitted).

In the present case, Respondent knew that Crown Service, the company he and his brother had owned and operated for approximately six years, owed over $70,000 in federal taxes. Respondent also knew that, notwithstanding his brother's commitment to pay the company's outstanding tax liability, he remained personally liable to the IRS for the company's unpaid taxes. Respondent conceded in a letter to Bar Counsel before the commencement of this action, and the hearing judge found as a fact, that Respondent's purpose in transferring funds from his personal checking account to his attorney escrow

-8-

account was to conceal from the IRS money that he knew was subject to garnishment.

Similar violations have warranted disbarment by this Court in the past. Indeed, our cases firmly establish that the act of intentionally "thwart[ing] collection efforts by creditors," in violation of MLRPC 8.4(c) and (d), is grounds for disbarment. *See Attorney Grievance Comm'n v. Foltz*, 411 Md. 359, 413 (2009). In *Foltz*, we disbarred an attorney who used his attorney escrow account to "hide loan monies, funds from his property management business, and other personal funds" from a creditor. *Id.* at 414. In *Powell*, we disbarred an attorney who used a trust account and an account belonging to his deceased father "for personal and business expenses, thereby misrepresenting the character and ownership of these accounts in order to avoid the claims of creditors." *See* 369 Md. at 469, 475-76. In *Attorney Grievance Comm'n v. Snyder*, 368 Md. 242 (2002), we disbarred an attorney who used an attorney escrow account "as a repository for the personal assets he sought to conceal from his creditors during the pendency of his involuntary bankruptcy." *Id.* at 260, 276. In light of these cases, it cannot be doubted that, absent compelling extenuating circumstances, Respondent's misconduct compels the same disposition: disbarment. Respondent presented no such circumstances.

All of the above, taken together, led us to conclude that disbarment is the appropriate sanction for Respondent's misconduct. Accordingly, we entered the February 12, 2014, per curiam order disbarring Respondent and awarding costs against him.